E-FILED
Wednesday, 02 May, 2018  11:29:33 AM
Clerk, U.S. District Court, ILCD

## The United States District Court
## Central District Of Illinois

Ian Lockhart, **Plaintiff**

— vs —

John R. Baldwin (I.D.O.C. Acting Director),
Randy S. Pfister (Warden of Stateville C.C.),
Michael P. Melvin (Warden of Pontiac C.C.),
Debbie Knauer (Administrative Review Board),
Charles F. Best (Adjustment Committee Member),
Barea V. Miggins (Adjustment Committee Member),
Clemons (Intelligence Officer),
Taylor (Intelligence Officer),
Sean P. Furlow (Reporting Officer),
S. Prentice (Cell-house Major),
Corley (Cell-house Lt.),
Piña (Gallery Officer),
Berlanga (Correctional Officer),
Jane & John Does (A.D. Hearing Committee Members),
H. Cox (Grievance Officer),
S. Simpson (Grievance Officer),
K. Weaver (Grievance Officer),
John Doe (Medical Director),
Dr. R. Ojelade (Pontiac C.C. Physician),
sued in their individual and official
Capacities    **Defendants**

) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )

**Case No.**

<u>Jury Trial Demanded</u>

## <u>Complaint</u>

Now Comes Plaintiff, Ian Lockhart, # R-18787, Pro-se, on personal Knowledge as to its own acts and upon information and belief formed after reasonable inquiry as to the acts of others alleges as follows:

# Introduction

1.  This is a civil rights action filed by Plaintiff, Ian Lockhart, #R-18787, Pro-se, a state prisoner seeking a preliminary injunction, compensatory and punitive damages, declaratory and injunctive relief, and any further relief the court deems just and proper under 42 USC § 1983 and 1985 (3). Plaintiff alleges Defendants violated his rights under the 1st, 5th, 8th, & 14th Amendments of the United States Constitution. This claim stems from a series of events occuring from July 18, 2016 and continuing until present day; in which, defendants among other things denied Plaintiff his rights to due process of law, and were also deliberately indifferent to the substantial and serious risk of injury and irreparable harm to Plaintiff's health, safety, and over-all well being.

# Jurisdiction & Venue

2.  This action is brought pursuant to 42 USC §§ 1983, 1985 (3), and the 1st, 5th, 8th, & 14th Amendment of the United States Constitution. The court has jurisdiction over Plaintiff's claims of violations of Federal constitutional rights under 42 USC §§ 1331 (1) and 1343.

3.  Venue is proper in this district pursuant to 28 USC §§ 1391 (b) (1) as atleast one defendant resides in this judicial district, and all parties are residents of Illinois.

# Parties

4.  The Plaintiff, Ian Lockhart is an inmate at Pontiac C.C. 700 West Lincoln street, Pontiac, Illinois. 61764. He was housed in Stateville C.C. as well as Pontiac C.C. during the events discribed in this complaint.

5.  Defendants are employees of the Illinois Department of Corrections (I.D.O.C.) who are/were employed at Stateville C.C. 16830 Illinois 53, Crest Hill, Illinois 60403; Pontiac C.C. 700 West Lincoln street, Pontiac, Illinois. 61764; and, I.D.O.C. 1301 Concordia court, Springfield, Illinois 62794-9277 during the events discribed in this complaint.

6.  At all times, Defendants acted in their official capacity under color of state law.

7.  The individual Defendants are sued in their individual and official capacities.

# Statement Of Facts

8.  On July 13 2016 the Plaintiff was transfered from Pontiac C.C., to Stateville C.C. after

<u>Page 2 of 16</u>

being release from Administrative Detention on June 13, 2016.

## – Retaliation & Harassment –

9.   On July 18, 2016 Plaintiff was summoned and escorted to the intelligence\investigation unit to be interviewed. During this interview Defendants Clemons and Taylor propositioned Plaintiff to infiltrate the Gangster Disciples (G.D.s) as an informant and\or confidential source. After Plaintiff's refusal and denial of ever being a member of the G.D.s, Defendants Clemons and Taylor (of Stateville's intelligence unit) begun to threaten, intimidate and harass the Plaintiff.

10.   This harassment in the form of constant intimidation and obvious threats consist of, but weren't limited to transfering Plaintiff out of Stateville C.C. further away from his family and sending him back to Pontiac C.C., and placing him back into Segregation (seg), and Administrative Detention (A.D.).

11.   Plaintiff's response to the Defendants Clemons and Taylor's harassment consisted of but weren't limited to Plaintiff repeating that hes not a member, nor has he ever been a member of any STG, and didn't want to put his life on the line in prison as an informant.

12.   August 8, 2016 Defendant Clemons and an unknown officer approached Plaintiff with accusation of him trying to set up structure for the G.D.s. Dispite Plaintiff denying ever being a member and trying to prove it, Defendant Clemons again threatened to send Plaintiff back to Pontiac C.C.

13.   On August 26, 2016 Defendant Taylor and an unknown officer pulled Plaintiff out of a line going to the healthcare unit and began harassing Plaintiff, and intimidating him more threats.

14.   Defendants threats consisted of spreading false rumors to the G.D.s that Plaintiff is one of Gang Intels main informants among other things, and Taylor said that this would be a problem worth me being concerned about.

15.   On August 27, 2016 Plaintiff wrote and mailed out an emergency grievance directly to Defendant Warden Randy S. PFister explaining in detail the events of July 18, 2016, August 8, 2016 and August 26, 2016 as it pertains to the constant threats intimidation and harassment employed by Defendants Clemons and Taylor and the two unknown officers. Plaintiff explained that he feared for his life, safety and well being (see: Ex #4),

16.   On September 13, 2016 Plaintiff and 6 or 7 other inmates were summoned from our cell-house (F-House) and escorted to the intel/investigations unit to be questioned seperately

because of a fight that took place between 2 G.D.s in the chowhall.

17.   During the questioning of the Plaintiff, Defendant Clemons showed Plaintiff his August 27, 2016 emergency grievance that Plaintiff sent directly to Warden Randy S. Pfister.

18.   Defendant Clemons pressures Plaintiff with multiple threats consisting of but not limited to giving Plaintiff a trumpt up criminal case that'll add 8 or more years to his sentence, sending Plaintiff back to Pontiac C.C. with a term of indeterminate seg all if he (Plaintiff) wanted to "Play these type of games" (reporting defendants conduct in grievance).

19.   After Plaintiff stressed that he wasn't looking for trouble, and only wanted to do his time in peace, Defendant Clemons made the statement that if that was the case, Plaintiff's August 27, 2016 emergency grievance didn't exist anymore.

20.   Sometime a few days after September 13, 2016 Plaintiff wrote Defendant Warden Randy S. Pfister a letter asking if he had received his grievance back from the intel department and what was the status of said grievance (see: Lx #23).

21.   Plaintiff feared mentioning in this letter Defendents Clemons most recent threats because it was clear that Defendant Warden Randy S. Pfister would notify Defendants Clemons and Taylor to silence him (Plaintiff).

22.   On or about October 4, 2016 Defendant Taylor escorted Plaintiff to his office and among many things said Defendant Taylor threatened to make good on whatever threats Plaintiff "thinks" they (intel officers) may've made, and that they wouldn't mess with Plaintiff if he wasn't going to be a problem for them.

23.   On October 20, 2016 Plaintiff received an investigation report/ticket and was sent to disciplinary seg under investigation status.

24.   This investigation report/ticket failed to give Plaintiff notice of the rational as to the nature of the investigation Plaintiff was under, as was required by the 20 Ill. Admin code 504 (see: Ex # 1).

25.   On November 1, 2016, at about 7:30 Am, Plaintiff was taken from his cell and escorted to the intel/investigations unit where he was notified that he was being immediately transfered.

26.   After being prept for transfer, Plaintiff was handed a disciplinary report/ticket written by Defendant Sean P. Furlow for 205-STG or Unauthorized Organizational Activity; and 601- Conspiracy /102- Assault on any person (inmate), based solely off the testimony of 2 confidential sources who was not deemed to be reliable by this reporting Officer (see: Ex # 2).

27.   At this point Plaintiff was given an option to waive the 24 hour notice before a hearing and hear the ticket before being transfered, or stand before the Adjustment Committee in Pontiac C.C.

28.   Plaintiff had no choice but to waive the 24 hour notice or else he wouldn't be able to identify or find the witness' needed to give testimony in his behalf.

29.   Just minutes later, Defendants Lt. Charles F. Best and Barea V. Miggins (members of the Adjustment Committee) held the hearing.

30.   After the disciplinary report was read by Defendant Lt. Charles F. Best (chairperson) Plaintiff pled not guilty, denied being a G.D. and conspiring to have anyone assaulted, requested a continuance, and that his transfer be put on hold.

31.   Plaintiff explained that the disciplinary report lacked some very important information (which was required by 20 Ill. Admin Code 504) consisting of but not limited to:

   a.) the place and time of the reported incident ?

   b.) Who was reportedly assaulted, or who did Plaintiff conspire to have assaulted ?

   c.) Who were the individual(s) Plaintiff reportedly conspired with ?

   d.) Was there an actual assault, if so who committed it ?

   e.) If these questions couldn't be answered, where is the written statement to this fact pointing out reasons of security.

32.   Plaintiff also explained that he needed this information to be able to gather the appropriate witnesses to show his innocence.

33.   Defendant Barea V. Miggins appeared to be documenting all that Plaintiff said in the Adjustment Committee as Plaintiff spoke directly to her.

34.   After the hearing Plaintiff was immediately transfered back to Pontiac C.C. from Stateville C.C.

35.   On this same day of November 1, 2016 , the Adjustment committee found Plaintiff guilty of all charges and recommended 1-year of Seg , C-grade, commissary restriction and 6 months contact visit restriction.

36.   On November 3, 2016, Defendant Warden Randy S. Pfister reviewed and approved Defendants Charles F. Best and Barea v. Miggins recommendation. (see: Ex #█3)

### – Due Process Violations –

37.   On November 20, 2016 Plaintiff filed a grievance seeking direct review of the Administrative Review Board (A.R.B.) addressing multiple violations of his due process rights dealing with the investigation report/ticket, the disciplinary report/ticket, and the resulting disciplinary action. (See: Ex # 5).

38. Plaintiff's grievance consisted of but was not limited to the:

a.) Investigation report/ticket failing to give proper notice as was required by 20 Ill. Admin code 504 (pre April 1, 2017 amendments).

b.) Reporting officer (Defendant Sean P. Furlow) who wrote the disciplinary ticket failed to state in his report vital information Plaintiff felt was necessary to defend himself and know what witnesses to request. The report failed to give place and time of incident, who the victim was, or if there was a victim; who Plaintiff conspired with; or who committed the assault; nor did it give a statement as to why it withheld this information. Lastly, the disciplinary ticket never stated if its confidential sources were reliable.

c.) The Adustment Committees Barea Miggins only doccumented a few of plaintiff's statements but none of his request, questions or concerns during his hearing. Both defendants Charles F. Best and Barea Miggins of the aduustment committee never questioned any of Plaintiff witnesses and they never mentioned their reasons for denying Plaintiff's request for a continuance. Adustment Committee failed to follow the proper standard in its determination in finding the confidential sources reliable. Lastly, the committee's basis for decision was a verbatim rendition of the reporting officers report, resting solely on it (disciplinary report) while issuing no independant investigation.

39. On December 16, 2016 Plaintiff filed a grievance seeking direct review of the Administrative Review Board addressing the issue of Retaliation & Harassment committed by Defendants Warden Randy S. Pfister, Intel officers Clemons and Taylor (see: Ex# 7).

40. Plaintiff's December 16, 2016 grievance consisted of but isn't limited to:

a.) the continues and on-going acts of being threatened, intimidated and harassed by Defendants Clemons and Taylor and Warden Randy Pfister from July 18, 2016 to November 1, 2016.

8.) the issue of Plaintiff's emergency grievance dated August 27, 2016 coming up missing after Plaintiff was transfered from Stateville C.C. to Pontiac C.C.

41. On January 18, 2017 Defendant Debbie Knauer failed to recognize that Plaintiff laid out an on-going and continues pattern of _Harassment_ from 7-18-16 to 11-1-16, **and Retaliation** from 10-20-16 thru 11-1-16 and beyond; none the less, she only made note of the issue of harassment from 7-18-16 to 10-20-16, and that she received the grievance on 12-23-16. Defendant Debbie Knauer of the A.R.B. refused to address Plaintiffs 12-16-16 grievance on retaliation and harassment due to an flawed determination that it was filed untimely. (see: Ex# 8, 9, & 10)

Page 6 of 16

**42.** On May 16, 2017 Defendants Debbie Knauer (of the A.R.B) and John R. Baldwin (the acting Director of I.D.O.C.) denied Plaintiff's grievance on the disciplinary report dated 11-1-16, finding no violation of Plaintiff's due process ~~constitutional~~ rights.

## — Conditions Of Confinement —

**43.** In the process of Plaintiff doing the 1 year disciplinary seg imposed by Defendants Charles F. Best, Barea V. Miggins, and Randy S. Pfister; and upheld by Defendants Debbie Knauer and John R. Baldwin, Plaintiff was assaulted multiple times by other inmates throwing Human waste.

**44.** The assaults Plaintiff endured began mid December of 2016 in Pontiac c.c.'s North cell-house for inmates in A.D. status, and the worse behaved disciplinary segregated inmates. This is where Plaintiff was housed immediately upon his transfer from Stateville c.c. and was repeatedly assaulted (on 3 seperate occasions) by SMI (seriously mentally Ill) inmates (and others). Inmates threw Magic shave hair removal creme, blood, urine, feces (sometimes mixed together) and spat on him while attending rec in the outdoor singleman cages, and each time Plaintiff was denied a shower, a change of clothes or any form of a medical check-up or screening.

**45.** First grievance Plaintiff filed on being assaulted in the above noted fashion was on ~~12/21/16~~ December 21, 2016. The second grievance was filed on January 19, 2017. due to a seperate incident of the exact same circumstances. After speaking with the counselor on January 27, 2017 concerning these 2 grievances that Plaintiff mailed to her office, she "couldn't recall" ever receiving either of his grievances on the assaults, but stated she has no pending grievance in her office at this time.

**46.** So, on February 19, 2017, (before the 60 day timeframe to file a grievance was over) Plaintiff combined both issues from the missing grievances into one grievance and mailed out this same day. (see: Ex # 11)

**47.** About 2 weeks after Plaintiff mailed out his February 19, 2017 grievance, he spoke with Defendant Major S. Prentice concerning the constant assaults committed by SMI inmates and others while on the outdoor rec cages. Defendant Major S. Prentice informed Plaintiff that the counselor contacted her about the complaints in Plaintiff's Feb 19th, 2017 grievance. Defendant Major S. Prentice told Plaintiff that she had no control over what inmates chose to do with their rec time, and that if Plaintiff didn't like "it", he shouldn't go to the yard ~~anymore~~.

**48.** On September 16, 2017, Plaintiff was again assaulted by an SMI inmate while in the outdoor singleman rec cages. Plaintiff was hit in the face with a mixture of human urine, feces and magic shave hair removal creme, where it got directly into his eyes causing extreme pain and blurry vision.

**49.** Because inmates in these singleman rec cages are not allowed access to toilet facilities or any water throughout the duration of their 4 hour recreation periods, nor on hand correctional staff, Plaintiff was forced to remain out there with for about 3½ hours with no way of cleaning out his eyes and face.

**50.** Finally when yard was over, Plaintiff spoke with Defendant Lt. Corley about what happend and although Defendant Corley smelled the feces and noticed the magic shave had removed Plaintiff's eyebrow, he refused to allow Plaintiff a shower, change of clothes, or immediate medical attention. Plaintiff kept telling Defendant Lt. Corley about the burning pain in his eyes and light headedness but Defendant Lt. Corley's only response was that it wasn't that bad and Plaintiff would be alright.

**51.** Defendant Piña who was Plaintiff's gallery officer overlooked, ignored and reduced Plaintiff's request for medical attention or decontamination dispite plaintiff making him aware of the entire situation and constant pain in his eyes.

**52.** Defendant Berlanga who was a correctional officer on the 3pm-11pm shift was repeatedly told by Plaintiff that he was in serious pain and couldn't see clearly due to earlier having feces and urine thrown into his eyes. Plaintiff's request for immediate medical attention and treatment was denied by Defendant Berlanga.

**53.** When medical staff member, Defendant Sherry made her rounds, Plaintiff informed her of his situation and the consistant pain he was going through she told him that there weren't enough medical staff on hand at the moment and to submitt a sick-call request slip. So, Plaintiff did just that and gave it (sick-call request) to Defendant Sherry.

**54.** Plaintiff wrote and mailed out a grievance (emergency grievance) dated September 16, 2017 directly to Defendant Warden Michael P. Melvin about staff's deliberant indifference to Plaintiff's serious medical needs (see: Ex#12).

**55.** Defendants Warden Michael P. Melin, Grievance officer H. Cox, and A.R.B.'s Debbie Knauer all deemed Plaintiff's grievance not to be an emergency and refused to address the problem forcing plaintiff to endure the constant eye pain, blurry vision, and lack of any form of medical assistance and treatment. (see: Ex# 13 & 14).

**56.** On September 21, 2017 Plaintiff was finally allowed to see a physician (Defendant R. Ovelade) 6 days after being assaulted with human waste mixed with a chemical agent.

57. Defendant R. Ovelade looked into each of Plaintiff's eyes with a small light for a total of 3 seconds, then asked Plaintiff what happened. Plaintiff explained in detail as to what happened and discribed the continueas pain and blurry vision. Defendant R. Ovelade denied Plaintiff request for a test for expossare to diseases and the immediate medical treatment and stated with time Plaintiff's vision would get better and the eye brow will grow back.

58. After about ten minutes of Plaintiff practically begging Defendant Ovelade for pain relief and treatment, Defendant R. Ovelade finally agreed to perscribe Tylenol for the pain and placed Plaintiff on the waiting list to see an eye care professional. But the Defendant still refused to properly flush out Plaintiff's eyes or check for diseases expossare. Defendant Ovelade stated: "You will not die"... and, "Dont be mad at me, be mad at yourself for coming to prison", and to clop expecting free-world services for a $5.00 co-pay.

59. On September 29, 2017 Plaintiff was taken to see a eye doctor who examined Plaintiff's eyes and ultimately prescribed eye drops. Plaintiff explained that the Tylenol prescribed by Defendant R. Ovelade did not work and not only did the pain continue, but Plaintiff could not sleep and his vision was still blurry.

60. On October 10, 2017 Plaintiff wrote and mailed out an emergency grievance dated 10-10-17. In this grievance Plaintiff explained that the Tylenol prescribed for the eye pain hasn't had any effect, and that hes been submitting sick-call request dailey since 10-1-17 concerning the constant pain but all have gone unanswered. Plaintiff also explained in this grievance that the eye pain wouldn't allow him to sleep causing extreme headaches, and that he feared he had been expossed to a life threatening disease (see: Ex# 15)

61. Defendants Michael P. Melvin (warden), S. Simpson (Grievance Officer) and Debbie Knauer (A R B) all deemed Plaintiff's grievance not to be an emergency and refused to address the problem, forcing Plaintiff to endure the constant pain, blurry vision and lack of testing for expossare to diseases.(see: Ex# 16 & 17).

62. On October 26, 2017, Plaintiff was taken to see another eye doctor (differant from the first one) who examined Plaintiff's eyes, flushed out his eyes with a saline solution, ian some tests test, and prescribed a multiple dose anti-infective steroid combination eye drops.

63. Sometime (possibly a month) after seeing this eye doctor on 10-26-17, he was escorted back to the same eye doctor (from 10-26-17) for farther eye test, and it was determined that plaintiff would need glasses to correct his vision.

64. On October 11th, 2017 Plaintiff wrote the medical director explaining in detail all of

events that occured as it pertains to the assaults with human waste and his need for pain relief and a blood test. This was plaintiff's 3rd letter to the medical director fully detailing the the assault (on sept 16, 2017), the pain Plaintiff sceffered and blurry vision as well as the deliberate indifferance he suffered at the hands of correctional & medical staff. The Medical Director nor anyone from the Health Care Department ever answered any of Plaintiff's letters. (see: Ex # 22)

65. Due to these reoccuring events of assaults Plaintiff begin to experience psyciologically problems and begun seeing mental health profesionals regularly beginning 10-26-17 to this present day.

## — Conditions of Confinement —

66. On October 20, 2017, Plaintiff's disciplinary segregation sentence of one year was over but instead of being returned to general population he was forced to remain in the same cell and status.

67. On october 29, 2017, Plaintiff received notice that he was being considered for A.D. (Administrative Detention) placement due to the events reportedly giving rise to the offenses in the disciplinary report dated November 1, 2016 issued at statsville C.C.

68. On November 2, 2017 Plaintiff received a A.D. Hearing to determine whether or not he'll be placed in A.D. . On this same day, Defendants Jane & John Does of the A.D. hearing committee determined Plaintiff would be placed in A.D. Phase 1. During this hearing plaintiff explained to Defendants that A.D.'s phase 1 here in Pontiac c.c. is the exact same as disciplinary segregation in all aspects, and A.D. is'nt suppose to be punitive. Defendants told Plaintiff to grievance it.

69. On November 15, 2017 during the warden's tour of North segregation unit, Plaintiff spoke with Defendants Michael P. Melvin (warden), and Major S. Prentice (cellhouse Major) concerning his placement in A.D.'s phase 1, and how the conditions being identical to disciplinary segregation. Plaintiff explained that if disciplinary seg is a punitive status how is it that nothing changes once they he's placed into A.D.'s phase 1? Defendants explained that phase 1 is the most restritive phase but will get less restritive once I progress to phase 2, and even more once I progress to phase 3.

70. Plaintiff explained in detail that A.D.'s phase 1 in Pontiac C.C. was actually extending his segregation (disciplinary) time by an additional 90 days andustly but defendants Warden Michael P. Melvin and Major S. Prentice said the conditions of A.D. phases was up to their discretion.

71. On December 20, 2017, Plaintiff written and mailed out a grievance dated

addressing the issue of Pontiac C.C.'s A.D. phase 1 violating Plaintiff's due process rights and equal protection of the law by unlawfully extending his disciplinary segregation term by an additional 90 days (see: Ex # 18) also (see: Ex # 19 & 20).

71. On January 11, 2018 Plaintiff received a subsequent A.D. hearing conducted by the Jane & John Does of the A.D. hearing committee to determine whether or not Plaintiff will remain in phase 1 for an additional 90 days, or progress to the next phase (phase 2) or return to general population.

72. On this same day of January 11, 2018 the Defendants Jane & John Does of the A.D. hearing committee determined plaintiff would remain in his current phase without any reason or explanation as to why.

73. On February 9, 2018, Plaintiff grievanced the Defendants Jane & John Does of the A.D. hearing committee's failure to give notice of reason behind its determination for Plaintiff remaining in his current phase; moreover, for not elevating him to the next phase as punishment. Plaintiff was given no opportunity to defend himself, as well as the issue of phase 1 A.D. being equivalent to being in disciplinary seg for an additional 180 days beyond the 1 year term imposed by the Defendants on the adjustment committee and the warden of Stateville C.C.. (see: Ex # 21).

## — Exhaustion of Administrative Remedies —

74. The Plaintiff has exhausted his administrative remedies under the P L R A with respects to all claims and Defendants.

## Count 1   Due Process; Freedom of Speech; Self incrimination
(Retaliation & Harassment)

75. Each of the paragraphs in this complaint is incorporated as if restated fully herein.

76. Defendants Warden Randy S. Pfister, Intel officers Clemons and Taylor, and A R B ~~XXXXXXXXX~~ Debbie Knauer, actions and omissions caused Plaintiff to suffer retaliation because he refused to work as an informant \ confidential source for Stateville C.C.'s gang intelligence unit, and for grievancing the issue of Defendants constant and ongoing threats, intimidation, and harassment against Plaintiff while housed at Stateville C.C.. This imposed an atypical and significant hardship on Plaintiff in relation to the ordinary incident of prison life.

77. Plaintiff has a first amendment right to file grievances relating to the conditions of his confinement. Plaintiff filed 2 separate grievances (meritorious) to inform the Illinois Department of Corrections, and its agents of the conditions of his confinement:

a.) where he suffered from constant and ongoing threats, intimidation and harassment due to his repeated refusal to work undercover as an informant\confidential source.

b.) where Defendants retaliated against him placing him under investigation status unjustly, which led to ...

c.) an unjustified disciplinary report and subsequent disciplinary action,

d.) an unjustified transfer, and

e.) the disposal of his original emergency grievance dated 8-27-16 addressing defendants acts of intimidation, threats and harassment.

Plaintiff also had a fifth amendment right to be free from self incrimination. As a undercover confidential source against a STG, Plaintiff would've had to not only become a member but also involve himself in the lifestyle incriminating himself to obtain and share information. Defendants conspired against Plaintiff and violated his liberty interest and due process rights secured under the 1st, 5th, & 14th Amendments of the United States Constitution.

78. As a proximate result of Defendants conduct and failure to act Plaintiff has suffered deprivation of the rights secured under the constitution and laws of the United states. Such deprivations are causing and continue to cause immediate and irreparable injury. Plaintiff has no adequate remedy of law to address the wrongs described herein.

## Count 2   Due Process (Disciplinary Report & Actions)

79. Each of the paragraphs in this complaint is incorporated as if restated fully herein.

80. Defendants Warden Randy S. Pfister, Intel officers Clemons and Taylor, Acting Director John R. Baldwin, A R B's Debbie Knauer, Reporting Intel officer Sean P. Furlow, and the Adjustment Committee's Lt. Charles F. Best, and Barca V. Miggins, actions and omissions caused Plaintiff to be placed in disciplinary segregation for a term of 1 year, demoted to C-grade for 1 year, commissary restriction for 1 year, and 6 months of contact visit restriction. Furthermore, Defendants acts and omissions caused Plaintiff to be considered for A.D. placement, and ultimately placed in A.D. after his term of 1 year disciplinary segregation was complete. This imposed an atypical and significant hardship on Plaintiff in relation to the ordinary incident of prison life.

81. Defendant acts and omissions in finding Plaintiff guilty of 205-STG, 601-conspiracy\ 102-Assault of an inmate and sentencing him were in violation of 20 Illinois Administrative Code sections: (the Administrative codes used here are pre April 1, 2017 amendments)

a.) 504.30 e) where the investigation report failed to give adequate notice omitting the "subject" of the investigation;

b.) 504.30 (d)(2) where the disciplinary report failed to give adequate notice omitting the place and time of the alleged offense;

c.) 504.80 (d)(5) where the disciplinary report failed to give adequate notice omitting the name and statement of the reported victim (if there was actually an assault); the name and statements of the individual(s) who reportedly committed the reported assault (if an assault took place); the name(s) and statement(s) of the individual(s) whom Plaintiff reportedly conspired with to commit the reported assault; and\or providing a statement as to why this information is being withheld if for security reasons;

d.) 504.30 (b) where the reporting officer relied soley on the testimony of 2 confidential sources and never deemed or considered either source to be reliable;

e.) 504.80 (e)(f)(1)f(2)(g)(h)(2)(5)(3)(L)(1)(A)(i)(B)(i)(ii)(iii) where the Adjustment committee failed to document/record Plaintiff's oral statements, concerns, & questions, or request for a continuance, and a hold on transfer; and their responses and reasons for denying requests;

(f.) 504.80 (m)(1)(B)(i)(ii)(iii) where the adjustment committee deemed its 2 confidential sources to be reliable do to their "cooperating" statements and failed to establish their reliability as is required by law (where only one source reportedly gave a statement making Plaintiff culpable.

g.) 504.80 (L)(2) where the Adjustment committee's final summary report gave a verbatim rendition of, and relied soley on the reporting officer's disciplinary report as the evidentiary basis for its findings.

h.) 504.810 (a); 504.850; and 504.870 (a)(4) where the administrative review board failed to protect Plaintiffs right to Due Process when it refused to properly review and address Plaintiff's grievances dated 11-20-16 & 12-16-16 pertaining to disciplinary report and the Retaliation & Harassment Plaintiff suffered.

82.  Defendants actions violated Plaintiffs liberty interest and due process rights secured under the 14th Amendment of the United States Constitution.

83.  As a proximate result of Defendants conduct and failure to act Plaintiff has suffered deprivation of the rights secured under the constitution and laws of the United States. Such deprivations are causing and continue to cause immediate and irreparable injury. Plaintiff has no adequate remedy of law to address the wrongs discribed herein.

## Count 3 Conditions of confinement; Deliberate Indifference

84. Each of the paragraphs in this complaint is incorporated as if restated fully herein.

85. Defendants Acting Director John R. Baldwin, Warden Michael P. Melvin, ARB's Debbie Knauer, Major S. Prentice, Lt. Corley, Medical Director John Doe, Physician Dr. R. Ouelade, Officer Piña, Officer Berlama, Medical staff Sherry, and Grievance Officers S. Simons, and H. Cox subjected Plaintiff to conditions of confinement at Pontiac CC. that constituted a deprivation of basic human needs, including exposure to, infliction of, and failure to address the following conditions:

    a.) no access to water during recreation periods

    b.) no access to toilet facilities during recreation periods

    c.) constant and on-going exposure to assaults carried out by SMI and other inmates throwing feces, urine, blood and magic shave hair removal creme on Plaintiff during rec periods

    d.) staffs refusal to issue Plaintiff a shower, change of clothes immediate and proper medical attention after being expose to, assaulted with, and induced by the the throwing of feces, urine, blood and magic shave

86. Subjection to these deprivations, defendants failure to protect, the actual injury received and the risk they posed to Plaintiff violate contemporary standards of decency and denied Plaintiff minimal civilized measures of life's necessities.

87. These deprivations of basic human needs are serious and excessive given that they not only posed a serious risk of harm to Plaintiff's health and safety, but actually caused serious injury to Plaintiff physically and mentally.

88. Dispite having actual knowledge of the serious risk posed to Plaintiff's health and safety, Defendants have disregarded those risks, and took no actions to rectify them. Defendants refused Plaintiff immediate and adequate medical attention and acted with deliberate indifference towards the serious deprivations of Plaintiff's basic human needs, and rights.

89. Defendant's actions have deprived the Plaintiff of his right to be free from cruel and unusual punishment and demonstrate a reckless and callous disregard of his rights. As such, Defendants have violated and continue to violate the rights of Plaintiff protected by the 8th Amendment of the United States Constitution and 42 U.S.C. § 1983.

## Count 4 Due Process, Deliberate Indifference, & conditions of confinement.

90. Each of the paragraphs in this complaint is incorporated as if restated fully herein.

91.  Defendants Acting Director John R. Baldwin, ARB's Debbie Knauer, Warden Michael P. Melvin, Grievance Officer K. Weaver, and the Jane & John Does of the Administrative Detention hearing committee, actions and omissions caused Plaintiff to be placed in Pontiac C.C. A.D. phase 1. This imposed an atypical and significant hardship on Plaintiff in relation to A.D. phase 1 in other Illinois D.O.C.s.

92.  Defendants acts of placing and continuing to keep Plaintiff in Pontiac C.C.'s A.D. phase 1 status, and their support of it is an intentional tactic of extending Plaintiff's disciplinary segregation term beyond the one year imposed by the Adjustment Committee held in Stateville C.C.. This is so, due in part to the fact that Pontiac C.C.'s A.D. phase 1 status is identical in all respects, other than "title" to that of its disciplinary segregation (Punitive) status. This is in violation of 20 Ill. Administrative Code 504.690 (which dictates that A.D. status is suppose to be a non-punitive status) and 504.80(g)(2) and violates Plaintiff's liberty interest and Due Process rights secured under the 8th and 14th Amendments of the United States Constitution.

93.  Plaintiff's liberty interest and Due Process rights secured under the 14th Amend of the U.S. Constitution were also violated when Defendants chose to not notify Plaintiff of its reasons for forcing him to remain in phase 1 for an additional 90 days after the initial 90 days was complete. This denied Plaintiff the right to challenge the A.D. hearing committees reasons for refusing to promote him to next phase; thereby, punishing him without any indication as to why he must remain in the most restrictive (supposidly non-punitive) phase of A.D..

94.  As a proximate result of Defendants conduct and failure to act, Plaintiff has suffered deprivation of the rights secured under the constitution and laws of the United States. Such deprivations are causing and continue to cause immediate and irreparable injury. Plaintiff has no adequate remedy of law to address the wrongs described herein.

## Count 5  Indemnification

95.  Illinois law provides that public entities are directed to pay any tort Judgement for compensatory damages for which employees are liable within the scope of their employment activities.

96.  The Defendants are or were employees of the Illinois Department of Corrections who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff demands a Jury Trial and the following relief Jointly and severally against the Defendants:

a.) Compensatory damages in an amount to be determined by a Jury;

b.) Punitive damages in an amount to be determined by a Jury;

c.) Cost, interest, and attorney's fees;

d.) Preliminary injunction enjoining Defendant's continual violations of Plaintiff's constitutional rights;

e.) Such other and further relief as this court may deem Just and proper, including injunctive and declaratory relief.

Respectfully Submitted,

el. Loeblich, pro-se

Ian Lockhart R-18787
Pontiac Correctional Center
P.O. Box 99
Pontiac, Illinois. 61764

# Exhibits

**#1.** – My request for a copy of my Investigation Report (unable to locate my investigation report dated 10-20-16).

**#2.** – Disciplinary Report dated 11-1-16

**#3.** – Final Summary Report from the Adctustment Committee

**#4.** – Emergency Grievance dated 8-27-16 (Issues of Harassment by Stateville C.C.s intel officers) *Personal handwritten copy.

**#5** – Grievance dated 11-20-16 (Due process violations pertaining to investigation & disciplinary reports and disciplinary action).

**#6** – Administrative Review Boards response (to Ex#5) dated 5-16-17

**#7** – Grievance dated 12-16-16 (pertaining to Retaliation & Harassment suffered in Stateville C.C.)

**#8** – Letter to A R B dated 12-16-16

**#9** – Offenders Authorization for Payment of postage dated 12-16-16

**#10** – Administrative Review Boards response (to Ex#7) dated

**#11** – Grievance Dated 2-19-17 (pertaining to Assault with human waste)

**#12** – Grievance dated 9-16-17 (emergency grievance on Assault)

**#13** – Grievance Officer's response (to Ex#12)

**#14** – Administrative Review Boards response (to Ex#12); And Plaintiff's letter to A.R.B.

**#15** – Grievance dated 10-10-17 (emergency grievance on Assault)

**#16** – Grievance officer response (to Ex#15)

**#17** – Administrative Review Board response (to Ex#15)

**#18** – Grievance dated 12-20-17 (pertaining to A.D's phase 1 being same as seg)

**#19** – Grievance officer's response (to Ex#18)

**#20** – Administrative Review Board response (to Ex#18)

**#21** – Grievance dated 2-9-18 (pertaining to being force to remain in phase 1)

**#22** – Letter to Medical Director

**#23** – Affidavit on Exhaustion

Ex #1

From:
II: Lockhart # R-18787
W-833

To:
Records Office

Sept 21, 2016

→ I need a copy of my investigation report dated 10-20-16 from when I was in Stateville.

There haven't been any P. 96 forms in this cell-house in 3 weeks and I've been unable to obtain one. Please forward me one to sign and I'll return it.

P.S.
I also need a form to obtain my medical documents.

Contact Medical Records

Investigation reports are not in your Masterfile only grab's R# you need a copy plc attach the procedure to obtain one is attached. Both Eyler

Respectfully Submitted, II. Lockhart, R#

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Disciplinary Report**

Stateville C.C.
Facility

Date 11/1/16

| Type of Report: | |
|---|---|
| ☒ Disciplinary | ☐ Investigative |

Offender Name: ___Lockhart, Ian___        ID #: ___R18787___

Observation Date: ___10/20/2016___   Approximate Time: ___8:00___   ☒ a.m. ☐ p.m.   Location: ___SCC Investigations Unit___

**Offense(s): DR 504:** ___205 STG or Unauthorized Organizational Activity/601 to 102 Conspiracy to Assault any Person.___

**Observation:** (NOTE: Each offense identified above must be substantiated.)  This IDR will replace the INV/STAT IDR that was issued to offender IAN LOCKHART R18787 on 10/20/2016.  After an investigation was completed by the Stateville Investigations & Intelligence Unit, it has been discovered that offender IAN LOCKHART R18787 has violated the IDOC policy on Security Threat Group Activity.  The investigation was initiated after information was received by Confidential Sources, that members of the GD STG were organizing leadership structure and were actively engaging in STG activities at Stateville CC. STG activities include but are not limited to: committing or ordering violence against offenders and staff, paying "dues", disseminating information relevant to an unauthorized organization, and actively appointing or holding a leadership position in said organization.  During the course of the investigation, it was discovered that offender LOCKHART was actively holding the leadership rank of "OVERSEER" for the GANGSTER DISCIPLES—STG as well as authorizing a STG sanctioned assault on a fellow GANGSTER DISCIPLE affiliate that occurred on 10/18/2016 at the Stateville Correctional Center.  The information was provided by Confidential Sources whose names and IDOC numbers are withheld for safety and security reasons.

**Witness(es):** _____

☐ Check if Offender Disciplinary Continuation Page, DOC 0318 is attached to describe additional facts, observations or witnesses.

| S. Furlow | 3720 | _(signature)_ | 11/1/2016 | 7:00 | ☒ a.m. ☐ p.m. |
|---|---|---|---|---|---|
| Reporting Employee (Print Name) | Badge # | Signature | Date | Time | |

### Disciplinary Action:

**Shift Review:** ☒ Temporary Confinement   ☐ Investigative Status   Reasons: ___Nature of incident___

___Moory K. Laskey___  713   _(signature)_   ___11-1-16___
Printed Name and Badge #        Shift Supervisor's Signature        Date
(For Transition Centers, Chief Administrative Officer)

**Reviewing Officer's Decision:** ☐ Confinement reviewed by Reviewing Officer   Comment: _____

☒ **Major Infraction**, submitted for Hearing Investigator, if necessary and to Adjustment Committee

☐ **Minor Infraction**, submitted to Program Unit

___M. Carr___   _(signature)_   ___11-1-2016___
Print Reviewing Officer's Name and Badge #    Reviewing Officer's Signature    Date

☑ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only):
___Ihc x+m F   5103___   _(signature)_   ___11/1/16___
Print Hearing Investigator's Name and Badge #    Hearing Investigator's Signature    Date

Procedures Applicable to all Hearings on Investigative and Disciplinary Reports
You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports
You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing.  You may ask that witnesses be questioned along lines you suggest.  You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee.  You may have staff assistance if you are unable to prepare a defense.  You may request a reasonable extension of time to prepare for your hearing.

☐ Check if offender refused to sign

___ExNLorii___   ___EIL 3___   _Offender's Signature_   ID# ___E.ll.. di___
Serving Employee (Print Name)        Badge #        Signature

___11/1/16___   ___845___   ☐ a.m. ☐ p.m.
Date Served        Time Served

☑ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

___L. Lockhart___   ___R-18787___
Offender's Signature        ID#

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)**

_____        _____        _____
Date of Disciplinary Report        Print offender's name        ID#

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

_____   _____   _____   _____
Print Name of witness   Witness badge or ID#   Assigned Cell (if applicable)   Title (if applicable)

Witness can testify to: _____

_____   _____   _____   _____
Print Name of witness   Witness badge or ID#   Assigned Cell (if applicable)   Title (if applicable)

Witness can testify to: _____

Distribution:   Master File
Offender
Facility (2)

DOC 0317 (Rev. 2/2007)

Ex # 2
Page 2 of 2

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Disciplinary Continuation Page**

Stateville C.C.
_____
Facility

☒ Disciplinary Report  ☐ Investigative Report  ☐ Disciplinary Summary  ☐ Adjustment Committee Summary

Report/Incident Date:  10/20/16 _____  Incident # (if applicable): _____

**Offender Information:**

Offender Name: ____Lockhart_____  ID #: ____R18787_____

Use the space below to provide any additional information.

On 10/19/2016, CONFIDENTIAL SOURCE #1 identified LOCKHART as authorizing the STG related assault of a fellow GANGSTER DISCIPLE affiliate that occurred on 10/18/2016. The CONFIDENTIAL SOURCE identified LOCKHART as holding the leadership rank of OVERSEER for the GANGSTER DISCIPLES – STG.

On 10/19/2016, CONFIDENTIAL SOURCE #2  identified LOCKHART as holding the leadership rank of OVERSEER for the GANGSTER DISCIPLES – STG.

Offender LOCKHART is a documented GANGSTER DISCIPLE affiliate per the Stateville Intelligence Unit.

By holding the leadership rank of OVERSEER and authorizing Security Threat Group related assaults, I/M LOCKHART is in direct violation of the rules and regulations set forth by the Illinois Department of Corrections, under the conditions 20 Illinois Administrative Code CH. I, SEC.504 under the offense; 205-Security Threat Group or Unauthorized Organizational Activity; Engaging, pressuring, or authorizing others to engage in security threat group or unauthorized organizational activities, meetings, or criminal acts; displaying, wearing, possessing, or using security threat group or unauthorized organizational insignia or materials; or giving security threat group or unauthorized organizational signs.  Unauthorized organizational activity shall include engaging in the above activities by or on behalf of an organization that has not been approved pursuant to 20 Ill. Adm. Code 445 or 450. To which the Illinois Department of Correction's is in compliance with ILCS 730 5/3-2-2.

Lockhart was positively identified by Institutional Graphics

Page __2___of _2____

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

Name: LOCKHART, IAN

IDOC Number: R18787

Race: BLK

Hearing Date/Time: 11/1/2016  08:45 AM

Living Unit: PON-N-05-01

Orientation Status: N/A

Incident Number: 201603610/1 - STA

Status: Final

*Inmate signed waiver agreeing to hearing date less than 24 hrs. after ticket was served*

| Date | Ticket # | Incident Officer | Location | Time |
|------|----------|------------------|----------|------|
| 10/20/2016 | 201603610/1-STA | FURLOW, SEAN P | INTERNAL AFFAIRS | 08:00 AM |

| Offense | Violation | Final Result |
|---------|-----------|--------------|
| 601.Conspiracy/102 | Assaulting Any Person - Inmate | Guilty |
| | *Comments:* orderd hit on inmates | |
| 205 | Gang Or Unauthorized Organization Activity | Guilty |
| | *Comments:* STG GD | |

| Witness Type | Witness ID | Witness Name | Witness Status |
|--------------|------------|--------------|----------------|
| No Witness Requested | | | |

## RECORD OF PROCEEDINGS
Inmate Lockhart R18787 present and DR read. Inmate Lockhart R18787 pleads not guilty and states I'm not an active member or leader STG. I've received a ticket for STG, been at Menard working. He was identified as a GD because of where he comes from. How can I defend myself for charges. I didn't have anything to do with this.

## BASIS FOR DECISION
R/I reflects during the course of the investigation, it was discovered that inmate Lockhart R18787 was actively holding the leadership rank of "Overseer" for the Gangster Disciples STG as well as authoring a STG sanctioned assault on a fellow Gangster Disciple affiliate that occurred on 10/18/2016 at Stateville CC.
Several confidential sources identified inmate Lockhart R18787 as holding the leadership rank as Overseer for the Gangster Disciples.
Confidential source identified inmate Lockhart R18787 as authoring the STG related assault of a fellow Gangster Disciple affiliate that occurred on 10/18/2016.
The identity of the confidential sources are being withheld due to safety and security reasons and they are deemed reliable due to their cooperating statements.
Inmate Lockhart R18787 positively identified by Institutional Graphics.

## DISCIPLINARY ACTION  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|-------------|-------|
| 1 Year CGrade | 1 Year CGrade |
| 1 Year Segregation | 1 Year Segregation |
| 1 Year Commissary Restriction | 1 Year Commissary Restriction |
| 6 Months Contact Visits Restriction | 6 Months Contact Visits Restriction |
| Basis for Discipline: nature of offense | |

## Signatures
**Hearing Committee**

| | Signature | Date | Race |
|--|-----------|------|------|
| BEST, CHARLES F  - Chair Person | *[signature]* | 11/01/16 | BLK |
| MIGGINS, BAREA V | *[signature]* | 11/01/16 | BLK |

Recommended Action Approved

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

Name: LOCKHART, IAN

Hearing Date/Time: 11/1/2016   08:45 AM

Incident Number: 201603610/1 - STA

IDOC Number: R18787

Living Unit: PON-N-05-01

Status: Final

Race: BLK

Orientation Status: N/A

**Final Comments:** N/A

RANDY S PFISTER / RSP  11/3/2016

**Chief Administrative Officer**

Signature

11/03/16

Date

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

**Employee Serving Copy to Committed Person**

When Served  -- Date and Time

un Date: 11/4/2016 07:37:55

* Personal Handwritten Copy

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

| Date: August 27, 2016 | Offender: (Please Print) Ian Lockhart | ID#: R-18787 |
|---|---|---|
| Present Facility: Stateville C.C. | Facility where grievance Issue occurred: Stateville C.C. | |

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☐ Medical Treatment
- ☐ ADA Disability Accommodation
- ☐ HIPAA
- ☒ Other (specify) constant Harassment possible threat to my life

☐ Disciplinary Report: _____ / _____ / _____
Date of Report _____ Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

On July 18, 2016 I was summoned and escorted to the intel/investigations unit to be interviewed. During this interview, intel officers Clemons and Tailor began harassing me with threats of sending me back to A.D. in Pontiac c.c.. After making it clear to them that I was not a member of the Gangster Disciples they began to question me and treat me as if I were lying. Officer Clemons propositioned me to infiltrate the G.D.S as an informant and I immediately told him no and explained that I valued my life too much and didn't want to constantly look over my shoulder throughout my prison sentence. Officer Tailor kept trying to bring up my family and how close I was to them being in Stateville c.c. as he explained the benefits of being their c/I and how ... (Continued on Otherside)

Relief Requested: That I be allowed to stay in general population without working a confidential source for I.A. or gang intel; also that I be protected from any more threats from Clemons, Tailor or any staff.

☒ Check only if this is an **EMERGENCY** grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_I. Lockhart_                          R-18787        8 / 27 / 16
Offender's Signature                    ID#              Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: _____ / _____ / _____    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

_____

Print Counselor's Name _____ Counselor's Signature _____ Date of Response _____ / _____

---

**EMERGENCY REVIEW**

Date Received: _____ / _____ / _____    Is this determined to be of an emergency nature?

☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature _____         Date _____ / _____

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE (Continued)**

they can my time easy and comfortable. I continued to explain that I would have to become a member and begin carrying out STG related activities incriminating myself each time I reported back to them. This would make my time harder than it has to be, and I didn't want to put my life on the line to be an informant. Tailor said that if I didn't want to be there (in Stateville) anymore why didn't I just say so, as if he was going to transfer me. Finally, before being escorted back to my cell I was told by Clemons and Tailor that if anyone (G.D.'s) was forced into P.C. or any inmate or staff gets assaulted I would be facing criminal charges, seg time, and be transferred back to A.D.  I was told to send them a kite if I changed my mind about be a c/I and that because I chose to protect the G.D.'s I would find out the hard way that they (intel) were the ones to be feared.

On August 8, 2016 after being moved from F-4-41 to F-4-51, officer Clemons and another intel officer who I don't know approached me claiming that they've been getting kites saying I'm trying to set up structure for the G.D.'s. I told them that it wasn't true and that it was impossible due to the fact I wasn't a G.D., I had just gotten to this prison, and I'm isolated in F-house with limited movement due to being in stripes. They threatened to send me back to Pontiac if they kept getting kites about the G.D.'s trying to rebuild their structure. No matter how many times I kept trying to show & tell that I wasn't a member of any gang they kept threatening saying I wouldn't have anything to worry about if I told the truth. They wanted me to report to them using the phone as if I was calling my family.

On August 26, 2016 I was pulled out of the line by Tailor and a unknown hispanic officer. Tailor said that if I kept playing games ("trying to avoid them due to my refusal to work as an informant") they will make the gangs believe that I am working with them as their c/I. The hispanic officer said that because I feared the G.D.'s so much, what will happen if a rumor were spreaded amongst them that I was their main informant? He said that that's something worth me being concerned about.

At this very moment I feel that my life is on the line and because I refuse to work for gang intel as a confidential informant they will go out of their way to not only help jeopardize my life but also my stay here in general population. I've been staying to myself avoiding leaving my cell most of the time to prevent this type of trouble and I don't know what else to do. I'm not in any gang nor have I ever been and I don't want to get involved in the prison politics. I'm not going to be any trouble for anyone and only want to do my time in peace.

If the intel unit already began spreading these false rumors, my life may be in jeopardy as we speak.

Ex # 5
Page 1 of 3
continued on otherside..
1:18-cv-01178-SLD   # 1   Page 25 of 57
Personal Handwritten Copy

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

| Date: Nov 20, 2016 | Offender: (Please Print) Ian Lockhart | ID#: R-18787 |
| --- | --- | --- |

| Present Facility: Pontiac C.C. | Facility where grievance issue occurred: Stateville C.C. |
| --- | --- |

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☐ Medical Treatment
- ☐ ADA Disability Accommodation
- ☐ HIPAA
- ☑ Other (specify): Investigation Report and Summary

☑ Disciplinary Report: 11 / 1 / 2016    Stateville C.C.
Date of Report    Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

This grievance is in regards to the investigation report written October 20th 2016; the disciplinary report written November 1st 2016 to replace the above noted investigation report; and, the Final Summary report. All of which revolves around incident #201603610/1-STA.

On, October 20th 2016 while housed in Stateville C.C.'s F-House, I was sent to seg under investigation. The investigation report only stated that I was under investigation, and failed to inform me of why I was under investigation. According to 20 Illinois Administrative code 504.30(e), it clearly states that: ... an investigation report, may be issued that reasonably informs the offender of the subject of investigation to the extent that safety and security allow. ... (Continued on Otherside).

**Relief Requested:** To have all charges dropped and expunged from my record; to be release from seg and compensated $100.00 for everyday spent in seg.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

L. Lockhart    #R-18787    11 / 20 / 16
Offender's Signature    ID#    Date

**(Continue on reverse side if necessary)**

---

**Counselor's Response (if applicable)**

Date Received: ____ / ____ / ____    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

Print Counselor's Name    Counselor's Signature    Date of Response

---

**EMERGENCY REVIEW**

Date Received: ____ / ____ / ____    Is this determined to be of an emergency nature?
☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature    Date

Ex # 4

Page 2 of 3

This rule was not applied to me as the Administration failed in its obligation to uphold its own standards to insure that I am "reasonably informed" as to the subject of investigation.

The reporting officers failure to adhere to 20 Ill Admin code 504.30(c) left me with an inadequit notice. I sat for 12 days in disciplinary segregation in complete ignorance of the subject of my investigation with no way humanly possible to prepare a defence.

On November 1st 2016, 13 days later at about 7:30 A.M, I was informed for the first time that I was being transferred and imediatly rushed from my cell to the internal affairs office. At 8:45 am I received the disciplinary report charging me with 205 S.T.G. or Unauthorized Organizational Activity / 601 to 102 conspiracy to Assault any Person. After the Disciplinary Report was read to me I was given an option to waive the 24 hour notice of charges and hear my ticket at that moment, or hear it in Pontiac C.C. but that I was immediately being transfered regardless of my choice. With either option I was left with No way to defend myself. I was never informed of: ① Who was the victim?; ② Where did the reported assult actually take place?; ③ Who was the offender(s) reported to have committed this alleged assault that supposidly occured on 10/18/2016 ?; and ④ Who did I reportedly "Conspire" with to have the unknown assalent(s) assault this unknown victim?

This disciplinary report clearly states that: "After the investigation was completed by Stateville investigation & intelligence unit, it has been discovered that an offender I an Lockhart #R-18787 has violated the I.D.O.C. policy on Security Threat Group Activity." "During the course of the investigation, it was discovered that offender Lockhart was actively holding the leadership rack of "Overseer" for the Gangster Disciples - STG as well as authorizing a STG sanctioned assault on a Fellow Gangster Disciple affiliate that occured on 10/18/2016 at Stateville Correctional Center. The information was provided by Confidential Sources whose names and I.D.O.C. numbers are withheld for safety and security reasons.

There were only 2 confidential informants (Confidential Source #1 and 2#) And while both sources claim I was a member of a STG, only 1 of them (confidential Source #1 ) made the claim that I authorized the STG related assault of a fellow Gangster Disciple affiliate that occured on 10/18/2016. The investigation & intelligence units not only failed to establish ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ a sufficient number of confidential sources to substantiate the charges, they also failed to establish if these sources were reliable and why deemed reliable. All charges were based upon the information provided by thes 2 confidential sources who were not deemed reliable.

After choosing to waive the 24 hour notice of charges prior to the hearing, my disciplinary report was immediatly read to me for the second time, but this time it was by Lt. Charles Best, the chairperson of the adjustment committee. After hearing my ticket I was asked how do I plead. I said Not guilty and Lt. Best said "Okay, you can go." I immediately asked "is that it?, and when and how will I get the chance to defend myself?" Lt. Best smiled and said if I thought it was possible go ahead. So I looked at Barea Miggins (the only other person on in the committee), and stated: 1. I'm not a member of the Gangster Disciples or any other STG. 2. I've never been a member of the G.D.s or any other STG. 3. I've never committed an assault of any kind, nor have I conspired or ordered anyone to commit an assault throughout the entire 16 years of my incarceration.



**Bruce Rauner**
Governor



**John Baldwin**
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Offender Name: _Lockhart, Ian_                     Date: _5/16/17_

Register # _R18787_

Facility: _Pontiac_

This is in response to your grievance received on _11/30/16_. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: _11/20/16_   Grievance Number: _____   Griev Loc: _Statesville_

O  Transfer denied by the Facility or Transfer Coordinator

O  Dietary _____

O  Personal Property _____

O  Mailroom/Publications _____

O  Assignment (job, cell) _____

O  Commissary _____

O  Trust Fund _____

O  Conditions (cell conditions, cleaning supplies)

Ø  Disciplinary Report dated _10/20/16_
    Incident # _2016031.1011-STA_

O  Other _____

**Based on a review of all available information, this office has determined your grievance to be:**

O  Affirmed, Warden _____ is advised to provide a written response of corrective action to this office by _____.

O  Denied, in accordance with DR504F, this is an administrative decision.

O  Denied, this office finds the issue was appropriately addressed by the facility Administration.

O  Denied in accordance with AD05.03.103A (Monetary Compensation for Inmate Assignments)

O  Denied, as the transfer denial by the facility/TCO on _____ was reviewed in accordance with transfer procedures and is an administrative decision.

O  Denied as the facility is following the procedures outlined in DR525.

O  Denied as Cell Assignment/Housing is consistent with the Department's determination of the appropriate Operational capacity of each facility.

O  Denied as procedures were followed in accordance with DR 420 for removal/denial of an offender from/for an assignment.

Ø  Denied as this office finds no violation of the offender's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offender committed the offense cited in the report.

Other: _____

FOR THE BOARD: _Debbie Knauer_      CONCURRED: _John R. Baldwin_
        Debbie Knauer                             John R. Baldwin
     Administrative Review Board                     Acting Director

CC:   Warden, _Pontiac_ Correctional Center
      _Lockhart_ , Register No. _R18787_

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

www.illinois.gov/idoc

4. I needed the adjustment committee to: (A) check the reliability of said sources...

(B) to interview the individuals whom was ~~said~~ supposed to have ~~assaulted~~ been assaulted to fi out if he had any information that may exonerate me...

(C) to interview the individual(s) who committed the assault to find out why he (or they) did i and if he had any info that may exonerate me...

(D) I needed to know where this assault was suppose to have taken place...

(E) I need to know with whom did I conspire with...

(F) That I need to not be transferred, at least until I could gather the names, I.D. # a testimonies of those that could possibly exonerate me, or testify in my behalf...

(G) That if I heard my ticket after I transferred it would be impossible to gather the Proof witnesses needed, so please grant me a continuance and postpone my transfer...

I was told my hearing was over, and within minutes I was being transferred to Pontiac.

On November 7th, 2016, I received my summary report, which showed I was found g of all charges, and recommended for 1 year c-grade, 1 year segregation, 1 year commissary restriction, and 6 months contact visit restriction on the exact same day of the hearin

The basis for decision clearly relied solely on the report of the reporting officers, it mimics the disciplinary report almost verbatim. This is done in complete disregard t the September 20, 1981 "Memorandum from the Administrative Review Board to the Adjustment Committee, Subject Basis for Decision.

Furthermore, the adjustment committee's basis for decision state the confidential sources were dee reliable due to their "cooperating statements". This statement goes completely against the internal affairs reporting officers report, which clearly shows that as to the 601 to 102 conspiracy to assault any person, only confidential source # 1 made that claim. The confidential source # 2 (the only other sourc only made the claim that I was in a leadership position for the G.D.'s.

So, without question, the reason for the adjustment committee's decision to find me guilty (of th 601 to 102 conspiracy to assault any person) is completely unfounded and is not supported by the fa of internal affairs reporting officer (J. Furlow # 3720).

Lastly, it has been well established by the courts that solely being a member of any security Threat Group (street gang) or holding a leadership position does not make an individual culpable (guilty). The individual must be charged with committing a unlawful act by, or on behalf of the organization (STG).

The Illinois Department of corrections claim that over 80% of its inmates are members of STGs, which means over 80% of its ~~member~~ inmates are in violation of "205 STG or unauthorized organizational activity" as is defined by its own rules. If being a member or holding a leadership position is a violation in itself, without being found guilty of committing an unlawful act, then all prisons within IDOC would house over 90% of its inmate population in segregation until each inmate is no longer a member.

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

| | | |
|---|---|---|
| **Date:** Dec 16, 2016 | **Offender:** (Please Print) I. Lockhart | **ID#:** R-18787 |
| **Present Facility:** Pontiac C.C. | **Facility where grievance issue occurred:** Stateville C.C. | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [x] Other (specify): Retaliation & Harassment

- [ ] Disciplinary Report: ____ / ____ / ____
  Date of Report      Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

This particular grievance is pertaining to the harassment, staff misconduct, and retaliation committed against me by I.D.O.C.'s Intelligence Investigation, unit and other staff members while housed in Stateville Correctional Center.

After being transferred to Stateville C.C. on July 18, 2016, I was summoned to the intelligence investigations unit to be interviewed on July 18, 2016. During this interview I was questioned/interrogated by officer Clemons and Tailor (Full names and badge numbers unknown). This interview began with officer Clemons filling out paper work while asking me some basic questions as to my name, I.D. number, housing location, etc. Once Clemons began asking me about gang/STG affiliation, the interview quickly changed as officer Tailor ... **(Continued On Otherside)**

**Relief Requested:** That all parties found to have been involved be fired and prosecuted; that I be protected against all I.D.O.C. staff from further possible retaliation due to this action; and, the all disciplinary action from this point forward be reviewed by a independent ... **Continued on Page 4**

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| | | |
|---|---|---|
| ~~I. Lockhart~~ (Offender's Signature) | R-18787 (ID#) | 12 / 16 / 2016 (Date) |

*(Continue on reverse side if necessary)*

---

**Counselor's Response (If applicable)**

Date Received: ____ / ____ / ____

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

Print Counselor's Name      Counselor's Signature      Date of Response

---

**EMERGENCY REVIEW**

**RECEIVED DEC 2 3 2016 ADMINISTRATIVE REVIEW BOARD**

Date Received: ____ / ____ / ____

Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature      Date

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

assisted officer Clemons in the harassing interrogation filled with direct and clear threats. I was asked by Clemons what gang I was/am affiliated with, and I told him that I wasn't affiliated with any gang. Clemons and Tailor both began asking one after the other, "was I ever affiliated?", "was I eradicated?", "am I off count?", etc. I stated that I was not a member of any gang or street organization, nor was I ever a member at any time in my life. Both Clemons & Tailor seem angry at this point and said that it didn't matter what I chose to tell them, because they know for a fact I was/am a G.D. and holding a leadership position. They claimed that Confidential sources here in Stateville C.C. and in Menard C.C. had me labled as a major gang leader. I then told them that I don't know anything about why this is being said because I've never been apart of any STG, and that I've never been written up or investigated for any STG activity throughout the entire 16 years of incarceration. I also mentioned that the first and only times during my entire incarceration I've ever heard mention of STG involvement was when my request to get married was denied back in 2013 due to my STG membership affiliation while housed in Menard C.C. Also, when I was in A.D. (administrative Detention) in Pontiac C.C. one of the rationals for my continued placement was dealing with STG involvement. I was never told how or why this STG involvement became attached to my name but I was never given the chance to defend myself against the accusations. I've always made it clear throughout my life. (free or incarcerated) that I wasn't part of any gang.

   Officer Clemons then offered me a proposition to infiltrate the Gangster Disciples (G.D.) and be a confidential source\informant for him. I immediately said No! because, I valued my life too much and did not want to spend the remainder of my 57 year sentence looking over my shoulders, too nervous to sleep. Officer Tailor then began explaining the benefits of being their C/I and how they can make my remaining time "easy" and "comfortable". They kept bringing up how it was in my best interest to work with them because they knew my mother, sister, and nieces lived less than 30 minutes away. After about the 3rd time they mentioned my family and then being so close to the prison, I asked why were they concerned with my family? and that I'm not going to put my life on the line to be an informant. So Tailor said that if I didn't want to be in Stateville C.C. anymore, why didn't I just say so. And finally before I was escorted out of their office, and back to my cell-house, I was told that if the G.D.'s send any inmate to Protective Custody (P.C.) or assault any staff or inmate I would be facing criminal charges, seg time, and be tranfered back to A.D. I was told that because I chose to protect the G.D.'s I would find out the hard way, that they aren't the ones to be feared; but if I changed my mind, just send them a kite.

   On August 8, 2016, I was moved from cell F-4-41 to F-4-51. Officer Clemons and another intel/invest officer (whose name I didn't know) approached me claiming that they are getting kites saying that I'm trying to set up structure for the G.D.'s. I denied the claims and stated that I had just gotten to this prison, and don't know many people so how is it possible with me being isolated in F-house with limited movement and little to no contact with others (due to being in the "Stripper Program"). They said that they know that guys are coming in from Pontiac C.C. trying to rebuild and structure the G.D.'s, and that I will be going back if they kept getting those kites. I kept repeating to them that I was not a member of any gang/STG! So the other officer with Clemons (unknown to me) told me to just call them as if I'm making a regular call to my family and fill them in on who's the people within the G.D.'s leadership here in Stateville. They said that they already knew who they were, and if I told them the truth I wouldn't have anything to worry about.

EX # 1
Page 3 of 4

1:18-cv-01178-SLD   # 1   Page 31 of 57

RECEIVED

DEC 2 3 2016

ADMINISTRATIVE
REVIEW BOARD

Then they left.

18 days later, on August 26, 2016, I was pulled out of the line by Intel officer Tailor and an unknown hispanic (possibly) male officer, and was told that if I keep "playing games" they will make it look as if I'm working with them as their C/I. The unknown officer said that sense I feared the G.D.'s so much, what'll happen if a rumor was spreaded amoungst the G.D's that I was one of their main informants? He says that that'll be a problem for me worth being concerned about.

The next day on August 27, 2016 I mailed out an emergency grievance directly to the Warden (Pfister). Within this grievance I asked that it also serve as an offical written complaint of Harassment, Intimedation and threats against officers Clemens, Tailor, and the entire Intelligence\Investigations unit within Stateville C.C. Also, in this grievance I'm speaking of, I explained in great detail all that's noted above as it pertains to my interactions with the members of Stateville's Inte/Invest units on July 18, 2016; August 8, 2016; and August 26, 2016. I explained that I felt the prison staff was putting my life in jeopardy, and that if I didnt help the intel/invest unit to infiltrate the G.D.'s they threatened to make me appear to be an informant working with them. I also explained all of the other threats that were issued against me.

On September 13, 2016 a fight took place in the Chow Hall between 2 other inmates. Later that day, I amoung 6 or 7 other inmates was called to the intel/invest unit to be interviewed seperately. During my interview I was asked why 2 G.D.'s were fighting, and I told them that I wasn't a G.D., and dont know anything about G.D. business. After being told I was a liar, and the reason for the fight, I was then shown my emergency grievance that I sent to the Warden on August 27, 2016. I asked how did they get my grievance, and that it was suppose to go to the warden. They said how did I know that it didnt? Then they stated that if I wanted to play these type of games they would bury me with a new case. I immediately said that I hasn't done anything wrong. Then I was told that I had just committed a staff assault, and with the weapon they had just found on me would easily add another 8 years or more to my sentence, and that I will be fighting my case from Pontiac C.C. while in indeterminate seg. I told them that I just wanted to do my time as peaceful as possible without all of the prison politics. I was then told that "if thats the case, this grievance no longer exist". After that, I was allowed to leave.

Within about 3 weeks from that (Date unable to recall), Officer Tailor escorted me to his office where he began questioning me about the conversations I was having with my wife on the phone. He wanted to know why I was talking to her about me wanting to leave Stateville as if I'm preparing her for something bad to happen. He kept asking what was I planning? over and over. I told him that the prison staff has been making it clear that they didnt want me there, and that he himself told me personally that he didnt want me there.; most importantly I nolonger feel safe here and would like to submit to be transfered. He told me that there's no where for me to run, and as long as I'm in the state of Illinois they would be able to make good on whatever threat it is "I think" they mayve made. I was then told that they weren't going to mess with me as long as I wasn't going to be a problem for them; however, I should very seriously consider working with them and my prison time would be far better than I could've expected.

On October 20, 2016, I was sent to seg under investigation without any explanation or

rational as to why. And on Nov 1st, 2016, I received a disciplinary report for 205 STG/unauthorized organizational activity; and, 601 conspiracy/102 Assaulting any person (inmate). This ticket was written by internal affairs. Seconds after receiving this ticket I was told that I was being immediately transferred, and I was given the option to hear the ticket right that second or when I got to Pontiac C.C. On that same day I received the ticket, I heard the ticket by the adjustment committee, was found guilty and sentenced to 1 year seg, 1 year c-grade, 1 year commissary denial, and 6 months contact visit restriction.

These charges are false and said to have stemmed from information from only 2 confidential sources. This was a direct result of me not wanting to be a informer for I.D.O.C's intel/ investigation unit and for writing them up in my emergency grievance on August 27, 2016.

After sending out multiple request for a status report on my August 27, 2016 emergency grievance I still havent received a response and I personally believe it was confiscated and destroyed by Stateville C.C.'s intel/invest unit.

It is well known amongst the prison population that confidential informants/sources are well compensated for their assistance regardless of the fact most times the c/I's intent is to get other inmates "out of the way"; or, the staffs intent to get certain inmates "out of the way" unlawfully.

The information used against me was fabricated to retaliate against me and have me removed from the prison, isolated and punished unlawfully.

I fear that the Illinois Department of Corrections will retaliate against me even further for pointing out the misconduct by its intel/invest unit. I worry that if this STG status I'm being placed under-isn't cleared-up, it'll be used to further I.D.O.C's retaliory practices.

These are the names of all members of I.D.O.C that I believe to be involved: (I'm also unsure if spelled correctly and some names are unknown but will be described to the best of my ability) 1.) Tailor (intel\invest); 2.) Clemons (intel/invest); 3.) Lt. Best; 4.) Warden Pfister; 5.) Bald head white guy (intel/invest) from August 8, 2016 interaction; and 6.) short hispanic looking guy (intel/invest) from the August 26th 2016 interaction.

**Continuation of Relief Requested :** ... body as long as I'm incarcerated in I.D.O.C.

RECEIVED

DEC 2 3 2016

ADMINISTRATIVE
REVIEW BOARD

**From:** Ian Lockhart #R-18787
Pontiac, C.C.
P.O, box 99
Pontiac, IL. 61764

$Ex \# 8$

December 16, 2016

Dear A.R.B.,

Please take notice that this grievance on staff misconduct retaliation and harassment is in conection with my grievance mailed to you on November 20th, 2016 concerning my November 1st 2016 disciplinary report.

Also I'm seeking a status report on my grievance pertaining to Yard Denial mailed out on August 3, 2016. I wrote you last month on November 15th, 2016 seeking a status report but I have yet to receive a response.

**RECEIVED**

DEC 2 3 2016

ADMINISTRATIVE
REVIEW BOARD

Respectfully Submitted,
I. Lockhart

Exhibit
# 9

Legal Mail

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Authorization for Payment

Date _____ December 16 2016 _____

Posting Document # _____

Offender Name___ I. Lockhart _____ ID# R-18787 ___ Housing Unit N-641 ___

Pay to _____

  Address _____

  City, State, Zip _____

The sum of _____ dollars and _____ cents charged to my trust fund

account, for the purpose of _ Send an out letter c. _____ ce to the ARB _

☑ I hereby authorize payment of postage for the attached mail. ☐ I hereby request information on electronic
funds transfers to be placed in the attached mail.

Offender Signature _ I. L. Lockhart _____ ID# R-18787 _____

Witness Signature _____

☐ Approved ☐ Not Approved   Chief Administrative Officer Signature _____

Postage applied in the amount of _____ dollars and __47__ cents _Legal_

DOC 0296 (Eff. 1/2006 )
(Replaces DC 828)

Distribution: Business Office, Offender, Mail Room

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
## Return of Grievance or Correspondence

Exhibit
# 10

Offender: _Lockhart_ _____ _Ian_ _____ _818787_
          Last Name              First Name           MI      ID#

Facility: _Pontiac._

☑ Grievance: Facility Grievance # (if applicable) _____ Dated: _12/16/16_ or ☐ Correspondence: Dated: _____

Received: _12/23/16_ Regarding: _Staff @ Statewille CC - CO Clemons, CO Taylor_
          Date                    _Lieu.? Int, Warden BASter_

The attached grievance or correspondence is being returned for the following reasons:

---

**Additional information required:**

☐ Provide a copy of your written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☐ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal.

☐ Provide dates of disciplinary reports and facility where incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to:  Administrative Review Board
    Office of Inmate Issues
    1301 Concordia Court
    Springfield, IL   62794-9277

---

**Misdirected:**

☐ Contact your correctional counselor regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee.  If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns to:  Illinois Prisoner Review Board
    319 E. Madison St., Suite A
    Springfield, IL   62706

---

**No further redress:**

☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.

☑ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____.
                         Date

☐ No justification provided for additional consideration.

---

Other (specify): _Offender cites 7/18/16, 8/8/16, 8/26/16, 8/27/16 & 10/20/16 as date/s he_
_was harassed by the above named staff. This office notes ARB received_
_grievance 12/23/16 therefore grievance ruled untimely._

Completed by: _____ Debbie Knauer _____ _Debbie Knauer_ _____ _1/18/17_
           Print Name             Signature        Date

Distribution:   Offender
          Inmate Issues               *Printed on Recycled Paper*           DOC 0070 (Rev.4/2013)

K Personal Handwritten Copy

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: Feb 19, 2017 | Offender: (Please Print) Ian Lockhart | ID#: R-18787 |

| Present Facility: Pontiac C.C. | Facility where grievance issue occurred: Pontiac C.C. |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: _____ / _____ / _____
  Date of Report                    Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

This grievance is pertaining to the constant assaults I suffered from SMI and other inmates throwing human waste on me and spitting on me while attending rec in the outdoor singleman cages. And the staffs refusal to let me take a shower afterwards or get a change of clothes.

On December 21, 2016 I mailed in a grievance to the counselors office only days after being repeatedly spat on and exposed to, and assaulted with feces, urine, and blood mixed together while on the singleman rec cages.

On January 19, 2016 I mailed out another grievance to the counselors office just days after being assaulted for the second ... (Continued On Otherside)

Relief Requested: Water and Toilet facilitys access on these singleman rec cags and to be protected from exposure to and assaults using human waste.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| ~C. Lockhart~ | R-18787 | 2 / 19 / 2017 |
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**

Date Received: _____ / _____ / _____

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

| Print Counselor's Name | Counselor's Signature | Date of Response |

**EMERGENCY REVIEW**

Date Received: _____ / _____ / _____

Is this determined to be of an emergency nature?

- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Chief Administrative Officer's Signature | Date |

time in less than one month here in Pontiac C.C.'s Singlemen rec cages where 3 inmates constantly threw urine and feces on me, off and on for about 2 hours.

After speaking with the counselor on or about January 27, 2016, I learned that she could not recall ever receiving either one of my grievances (12-21-16 and 1-19-16) but made it clear that she was not in possession of any pending grievances. So now I'm re-grievancing these two issues well within the 60 day limit of the first incident.

After both assaults I was denied a shower and a change of clothes because the gallery officers said that Major S. Prentice wouldn't allow it. Major S. Prentice told the gallery officer to tell me to wash-up in my sink and send my clothes to the laundry when its collected once a week.

I wrote Warden Michael P. Melvin concerning not being allowed water on these singlemen rec cages or access to toilet facilities; as well as the constant assaults from SMI and other inmates throwing human waste. The warden refuses to respond.

We're being forced to choose between our right to recreation and our right to human decency. If we choose to be free from exposure to human waste we must deny ourselves recreation, and if we choose recreation we're exposed and assaulted with blood, urine, feces etc.

This is a clear denial of my 8th and 14th amend of the U.S. Constitutional rights.

EOF #12

Page 1 of 2
continued on otherside:

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: Sept 16, 2017 | Offender: (Please Print) I. Lockhart | ID#: R-18787 |
|---|---|---|
| Present Facility: Pontiac C.C. | Facility where grievance issue occurred: Pontiac C.C. | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [x] Other (specify): Refusal of Medical Treatment

- [ ] Disciplinary Report: ____/____/____ Date of Report    Facility where issued

> **Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

This grievance is pertaining to a incident that took place on the North Seg. yard today (9-16-17).

At about 9:00 am while on the yard (North Seg yard cages) something was thrown into my face by another inmate. This substance thrown into my face went directly into my eyes (mainly the right eye) and caused an immediate burning sensation. The substance thrown into my face gave off heavy fumes after a while, and made me light headed. This substance smelled like urine, feces and magic shave creme.

About 4 hours later, at or about 12 pm... (Continued On Otherside)

**Relief Requested:** I need immediate medical attention, Please...

[x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| ~L. Lockhart Offender's Signature | R-18787 ID# | 9 / 16 / 17 Date |
|---|---|---|

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

| Date Received: ____/____/____ | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: _____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

---

**EMERGENCY REVIEW**

| Date Received: 9 / 9 / 17 | Is this determined to be of an emergency nature? | [ ] Yes; expedite emergency grievance [x] No: an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|

| Chief Administrative Officer's Signature | | 9 / 9 / 17 Date |

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

rec time was over and the correctional officer began bringing us in from the yard. I immediately began telling Lt. Corley that something was thrown into my face/eyes causing a extreme burning sensation, light headedness, and burning my vision completly. I told Lt. Corley that I needed immediate attention (medically).

The Lt. (corley) told me that it wasn't that bad, and I would be okay. I repeated my need and request for medical attention and he (Lt. Corley) told me ~~that~~ to get over it.

Once I made it back to my cell I repeated my need and request for medical attention to my gallery c/o, officer Piña at least 3 times before his shift was over at 3:00pm. All 3 times was over-looked, ignored, and rejected.

During this entire second shift (3pm - 11pm) I've been requesting medical attention to the gallery officer (c/o Berlanga). My requests were rejected and I was forced to simply turn in a medical request slip to the medical staff member (Sherry) as she made her late night rounds. I fully explained that I was in pain and the entire situation to the gallery officers and medical staff member, in detail, but still, from 9am to now (11:30pm) I still haven't received any medical attention.

Sir, my only request is to Please see a doctor as soon as possible to have my eyes cleaned, examined, and treated.

 Ex # 13

Bruce Rauner
Governor



E 9-19-17

John Baldwin
Acting Director

## The Illinois Department of Corrections

Pontiac Correctional Center
700 W. Lincoln Street, P.O. Box 99 • Pontiac, IL 61764 • (815) 842-2816 TDD: (800) 526-0844

# MEMORANDUM

DATE: 9-20-17

TO:      Name: _Lockhart_    IDOC #: _R18787_

FROM:   Grievance Officer H. Cox
        Pontiac Correctional Center

SUBJECT: Grievance(s) dated: _9-16-17_ Topic: _Medical_ Issue: _Burning/blurred vision_
         _Sleep_                                                _light headed_
         _Conduct. - Lt Corley_
         _C/o Pina_

The attached is being returned for the reason(s) listed below:

__X__   Contact your Correctional Counselor.  Per DR 504 Grievances, "A committed person shall first
        attempt to resolve incidents, problems or complaints, other than complaints concerning
        disciplinary proceedings or sexual abuse, through his counselor".

_____  Use proper Committed Person's Grievance (DOC 0046).

_____  Provide date(s) of disciplinary reports(s) and facility where incident(s) occurred.

_____  Forward grievance directly to the Administrative Review Board (protective custody, involuntary
        administration of psychotropic medications, disciplinary reports from other facilities, other
        issues from other facilities except personal property or medical).

_____  Not submitted in the timeframe outlined in Department Rule 504; therefore, issue will not be
        addressed further.  Discovery date of incident, occurrence, or problem: _____.

_____  Unable to determine nature of grievance/correspondence.  Submit additional specific
        information.

_____  Illegible copy submitted – submit legible copy for consideration.

_____  Request restoration of GCC, segregation time cut, grade restoration to the Adjustment
        Committee.  If request is denied, utilize the grievance process for further consideration.

RECEIVED
OCT 1 2017
ADMINISTRATIVE
REVIEW BOARD

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in
offender behavior, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

To: Administrative Review Board

From: Ian Lockhart # R-18787

Re: Administrative Review of Grievance

Ex # 14
Page 1 of 2

Mailing Date: September 29, 2017
(Friday night)

To whom it may concern,

This grievance was reviewed at the highest levels of this institution (Pontiac c.c.) and I'm now seeking your review.

— On Sept 16, 2017, I forwarded an emergency grievance directly to the C.A.O (warden M. Melvin) due to the lack of immediate medical attention after having something thrown into my face (eyes) which smelled like urine, feces, and magic shave. Due to the constant pain, blurry vision, and light headedness of having human waste and some unknown chemicals tossed directly into my eyes, I was at an immediat risk of imminent personal injury and irreparable harm.

— On Sept 19, 2017, The Chief Administrative Officer reviewed my grievance and deemed my grievance not to be an emergency

— On Sept 20, 2017, The Grievance Officer (H. Cox) reviewed my grievance and also refused to assist in getting me immediate medical attention.

According to all available information known to me I had the right to immediate medical treatment and examination due to the possibility of ~~contracting~~ contracting a diseases of some sort. If and when a correctional officer is subjected to what I was it would've been treated as a imminent personal injury and possibly irreparable harm done to self.

P.S. Please return a copy of the attached documents
(Grievance & Memorandum from Grievance officer)

Respectfully Submitted,
E. Lockhart
Ian Lockhart # R-18787
Pontiac Correctional Center
P.O. Box 99
Pontiac, Illinois. 61764

RECEIVED
OCT 1 0 2017
ADMINISTRATIVE
REVIEW BOARD

Ex # 14
Page 2 of 2

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
### Return of Grievance or Correspondence

Offender: _Lockhart_ _Ian_ _R18787_
        Last Name       First Name     MI    ID#

Facility: _Pontiac_

☑ Grievance: Facility Grievance # (if applicable) _____ Dated: _9/16/17_ or ☐ Correspondence: Dated: _____

Received: _10/10/17_ Regarding: _Hall - Lt. Corley, CO Pina, CO Berlanga denied him_
     Date           _medical care 9/16/17_

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**

☑ Provide your original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☑ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely.

☐ Provide dates when incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to: Administrative Review Board
    Office of Inmate Issues
    1301 Concordia Court, Springfield, IL 62794-9277

**Misdirected:**

☐ Contact your correctional counselor or Field Services regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property and medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns in a letter to: Illinois Prisoner Review Board, 319 E. Madison St., Suite A, Springfield, IL 62706

**No further redress:**

☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Administrative Transfer denials are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ Administrative Review Board received the appeal 30 days past date of Chief Administrative Officer's decision; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____ Date

☐ No justification provided for additional consideration.

**Other** (specify): _____

Completed by: Debbie Knauer
   Print Name     Signature   10/23/17
                 Date

Page 1 of 2
continued on otherside

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 10-10-17 | Offender: (Please Print) I. Lockhart | ID#: R-18787 |
|---|---|---|

| Present Facility: Pontiac C.C. | Facility where grievance issue occurred: Pontiac C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: ____/____/____  Date of Report _____  Facility where issued _____

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

This grievance is pertaining to a substantial risk of imminent personal injury and serious irreparable harm to myself.

On September 16, 2017, Feces, urin, and magic shave was thrown in my face while on the yard, and because theres no water or toilet facilities I was unable to immediately flush my eyes or properly clean my face for about 3½ hours.

6 days later, on Sept 21st 2017, Dr. Obelade Finally prescribe something for the constant pain, but refused to flush my eyes or test me to see if I was exposed to any diseases.

The pain meds has Not worked and I've ..... (Continued on next Page)

**Relief Requested:** I'm only seeking proper treatment for the eye pain and blurry vision, and to be tested for expressure to diseases.

[x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

C. Lockhart    R-18787    10 / 10 / 17
Offender's Signature    ID#    Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: ____/____/____

- [ ] Send directly to Grievance Officer
RECEIVED
OCT 23 2017

- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____
ADMINISTRATIVE
REVIEW BOARD

_____    _____    ____/____/____
Print Counselor's Name    Counselor's Signature    Date of Response

---

**EMERGENCY REVIEW**

Date Received: 10 / 12 / 17

Is this determined to be of an emergency nature?
- [ ] Yes: expedite emergency grievance
- [x] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____    10 / 12 / 17
Chief Administrative Officer's Signature    Date

Distribution: Master File; Offender    Page 1    DOC 0046 (8/2012)

Printed on Recycled Paper

been submitting sick-call request slips everyday since the first of October 2017 but my request have gone unanswered.

This eye pain wont allow me to sleep and now I'm having extreme headaches and I'm being completely ignored by correctional officers and medical staff.

14 day after being exposed to human waste and magic shave in my eyes I finally seen the eye doctor who prescribed some eye drops. This was on Sept 29, 2017 and even til this day I have yet to receive those eye drops.

North house has a long history of "S.M.I." inmates throwing feces, urine, etc. on officers and inmates, but only the officers get immediate medical attention and checked for exposure to diseases.

I'm clearly at risk of imminent personal injury and Human waste exposure is clearly serious enough to warrent this emergency grievance.

I'm in pain with blurry vision and possibly been exposed to a life threatening disease(s)

Bruce Rauner
Governor

John Baldwin
Acting Director

EX # 16



$g^{10}/_{12}$

## The Illinois Department of Corrections

Pontiac Correctional Center
700 W. Lincoln Street, P.O. Box 99 • Pontiac, IL 61764 • (815) 842-2816 TDD: (800) 526-0844

# MEMORANDUM

**RECEIVED**
**OCT 23 2017**
**ADMINISTRATIVE REVIEW BOARD**

DATE: _10-13-17_

TO: Name: _Lockhart_ IDOC #: _R 18789_

FROM: Grievance Officer S. Simpson
Pontiac Correctional Center

SUBJECT: Grievance(s) dated: _10/10/17_ Topic _Medical_ Issue: _eye drops;_
_tested for exposure to diseases_

The attached is being returned for the reason(s) listed below:

__X__ Contact your Correctional Counselor. Per DR 504 Grievances, "A committed person shall first attempt to resolve incidents, problems or complaints, other than complaints concerning disciplinary proceedings or sexual abuse, through his counselor".

_____ Use proper Committed Person's Grievance (DOC 0046).

_____ Provide date(s) of disciplinary reports(s) and facility where incident(s) occurred.

_____ Forward grievance directly to the Administrative Review Board (protective custody, involuntary administration of psychotropic medications, disciplinary reports from other facilities, other issues from other facilities except personal property or medical).

_____ Not submitted in the timeframe outlined in Department Rule 504; therefore, issue will not be addressed further. Discovery date of incident, occurrence, or problem: _____.

_____ Unable to determine nature of grievance/correspondence. Submit additional specific information.

_____ Illegible copy submitted – submit legible copy for consideration.

_____ Request restoration of GCC, segregation time cut, grade restoration to the Adjustment Committee. If request is denied, utilize the grievance process for further consideration.

Page 1 of 2

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

Ex # 17

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
### Return of Grievance or Correspondence

Offender: _Lockhart_ _Ian_ _R18787_
      Last Name        First Name      MI    ID#

Facility: _Pontiac_

☐ Grievance: Facility Grievance # (if applicable) _____ Dated: _10/10/17_ or ☐ Correspondence: Dated: _____

Received: _10/23/17_ Regarding: _Medical - side effects caused from feces/urine thrown in face 9/16/17_
    Date

The attached grievance or correspondence is being returned for the following reasons:

---

**Additional information required:**

☐ Provide your original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☐ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely.

☐ Provide dates when incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to: Administrative Review Board
    Office of Inmate Issues
    1301 Concordia Court, Springfield, IL 62794-9277

---

**Misdirected:**

☐ Contact your correctional counselor or Field Services regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☒ Personal property and medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns in a letter to: Illinois Prisoner Review Board, 319 E. Madison St., Suite A, Springfield, IL 62706

---

**No further redress:**

☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Administrative Transfer denials are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ Administrative Review Board received the appeal 30 days past date of Chief Administrative Officer's decision; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____
    Date

☐ No justification provided for additional consideration.

---

**Other** (specify): _____

Completed by: _Debbie Knauer_     _Debbie Knauer_    _11/6/17_
    Print Name        Signature    Date

Ex # 18
Page 1 of 3
continued on otherside.

Original

N-616

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

N 16 068147

| Date: Dec 20, 2017 | Offender: (Please Print) Ian Lockhart | | ID#: R-18787 |
|---|---|---|---|
| Present Facility: Pontiac C.C. | | Facility where grievance issue occurred: Pontiac C.C. | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [x] Other (specify): — Due Process of Law — Equal Protection of Law — Conditions of Confinement Violations

- [ ] Disciplinary Report: ____/____/____
   Date of Report                    Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

This grievance is against Warden Melvin and the John & Jane Doe members of the Administrative Detention (A.D.) hearing Committee. Also all cell-house leadership governing A.D./seg. On 11-2-17 the A.D. hearing Committee completed the initial review and I was placed in Phase 1 status of Administrative Detention at Pontiac C.C. The Administration here at Pontiac C.C. has instituted a policy that mandates I do 90 days in Phase 1 after completing any disciplinary segregation sentence. Phase 1 status (of A.D) at Pontiac C.C is indistinguishable from disciplinary segregation status, so placement into Phase 1 status violates my Due Process rights, Equal Protection of the law and the Conditions of Confinement violates my 8th amendment rights. ....(Continued on Otherside)

**Relief Requested:** 1) Immediate removal from Phase 1 status. 2) Cease placing inmates into this Phase 1 status. 3) Placement into a non-disciplinary status. 4) Full removal of the segregation recreational cages; or in the alternative, provide water, toilet facilities and seasonal clothing.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| C. Lockhart | # R-18787 | 12/20/2017 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 12/26/17

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: Administrative Decision

| S. Boekmn | | 12/27/17 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

Date Received: ____/____/____

Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

DEC 2 3 2017

____/____/____
Chief Administrative Officer's Signature            Date

LX 10
Page 2 of 3
068147

... The Illinois Administrative code section 504.660 states that Administrative Detention is a "non-disciplinary status of confinement." Phase 1 status at Pontiac C.C. contradicts the language of 504.660. Phase 1 status at Pontiac C.C. is effectively a continuation of disciplinary segregation status. While in Phase 1 status here at Pontiac C.C. I must continue to wear the exact same disciplinary segregation jumpsuit; I'm confined to the exact same galleries and cells within North house segregation unit; I'm only allowed access to the exact same outdoor recreational single-man cages; I am handcuffed and shackled during all movement exactly the same as while in disciplinary segregation; I'm only allowed to purchase from commissary "segregation allowed items"; and, I'm only allowed segregation visits. There are No conditions, circumstances, or privileges awarded that distinguishes Phase 1 status (A.D.) from that of disciplinary segregation, so its only a lateral move rather than a promotion. It is unquestionably clear that though my status changed from disciplinary "segregation" to "Phase 1" Administrative Detention in language, Phase 1 A.D. is still a disciplinary status, and contradicts the language and intent of Ill. Adm. code sec. 504.660.

The Illinois Department of Corrections maintains A.D. programs within 2 other institutions (Menard C.C. & Lawrence C.C.), and the Phase 1 status at these other institutions are dramatically different than here at Pontiac C.C. The other 2 institutions provide state issued "blues" (same as general population) for inmates to wear while in A.D. Phase 1; the other institutions relocate disciplinary segregation inmates after being released from disciplinary segregation to non-disciplinary sections of the cell-houses or other houses in the institution; these other institutions allow A.D. Phase 1 inmates to attend the Administrative Detention yards for recreation; these other institutions do not shackle the inmates ankle before any and all movements while in A.D. Phase 1; and, these other institutions allow Phase 1 inmates to purchase the exact same commissary items as general population, including food & drink. Inmates within other A.D. programs are similarly situated and theres absolutely no reason or justification for me to be treated differently here in Pontiac C.C. Me being treated differently (and the circumstances around it) while similarly situated violates the Equal Protection of law, and both Equal protection of the law and Due Process rights are being violated by unlawfully extending my disciplinary segregation for an additional 3 months.

Inmates in Phase 1 status are only permitted to attend disciplinary segregation recreational outdoor yards and conditions within these cages form an 8th amendment violation for cruel and unusual punishment. While in Phase 1 status inmates here in Pontiac C.C. are provided 3 recreation periods per week; for 4 plus hours each period, and all recreation is held outdoors in the single man disciplinary segregation cages. Inmates must endure the extreme elements of all 4 seasons for atleast 4 or more hours, 3 times per week.

In the summer months inmates must endure the extreme heat while wearing a full one piece jumpsuit; if this jumpsuit is taken off or pulled down to be worn around the waist a disciplinary ticket is written. No drinking water is provided, no matter how hot the temperature

Ex #18
Page 2 of 3
1:18-cv-01178-SLD  # 1   Page 49 of 57
ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

068147

gets. No toilet facilities is provided throughout the entire duration of recreation and inmates are forced to "hold it in", if able, or urine and defecate on themselves or on the ground in their cages. In the winter months inmates must endure below freezing temperatures while only allowed to wear one layer of clothing, with boots, gloves and skull caps being prohibited. At times inmates are forced to stand in 3 plus feet of snow because the cages aren't shoveled, and no salt (rock salt) is utilized prior to placement into these cages. This forces inmates to spend the entire 4 plus hours of recreation either standing in one spot or trampling through the snow only to return with wet socks, shoes and jumpsuit in freezing temperatures. In the Spring & Fall months inmates must also endure the rain without any rain coats, boots, or hats, these items are not provided and are prohibited. The outdoor segregation single-man cages are the only form of recreation that is provided for inmates in disciplinary segregation and A.D. Phase 1. Both disciplinary segregation and A.D. Phase 1 inmates attend yard/recreation together, at the same times and on the same days, and are indistinguishable from one another. The extreme elements, lack of drinking water, and the lack of facilities to dispose of human waste are cruel and unusual punishment and violates the 8th amendment of the United States Constitution.

Lastly, another Due Process, Equal Protection of the law and 8th amendment violation is found in the fact that while disciplinary segregation and Phase 1 A.D. inmates are stored in these same outdoor single-man disciplinary segregation cages, the seriously mentally ill (SMI), mentally ill (MI), and other individuals in disciplinary segregation throw human waste on the inmates in the cages connected to theirs.

On numerous occasions (here in Pontiac C.C. North segregation unit) I've personally been a victim and exposed to human feces, urine, & spit, sometimes all mixed together with chemical agents like toothpaste and/or magic shave. This has been an on-going, long standing and continues problem where inmates in Pontiac C.C. segregation housing units has attacked officers and inmates alike using human waste and chemical agents, most times mixed together.

Despite no longer being in disciplinary segregation status and now placed into Administrative Detention Phase 1, nothing has changed besides the language on paper as it pertains to the status of my confinement. Not only has my disciplinary segregation status been unjustly extended for an additional 90 days by way a new "confinement title" (A.D. Phase 1), the conditions of confinement are cruel and unusual punishment.

— End of Grievance —

DEC 2 3 2017

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE**

| Grievance Officer's Report |
|---|

**Date Received:** December 23, 2017    **Date of Review:** January 29, 2018    Grievance # (optional): 068147

ID#: R18787

**Offender:** Lockhart, Ian

**Nature of Grievance:** Administrative Policies - Administrative Detention Placement.

**Facts Reviewed:** Offender grieves that on 11.2.2017, the AD Hearing Committee completed the initial review and he was placed in Phase 1 status of Administrative Detention. Offender grieves that he must do 90 days in Phase 1 after completing his disciplinary sentence. Offender alleges that, "Phase 1 status (of AD) at Pontiac CC is indistinguishable from disciplinary segregation status, so placement into Phase 1 status violates my Due Process rights." Offender states that the AD programs at Menard CC and Lawrence CC are "dramatically different" than at Pontiac CC. Offender grieves that recreation for Phase 1 offenders is done in, "recreational outdoor cages."

This Grievance Officer reviewed correspondence and according to the counseling summary dated 11.17.2017. the AD Committee completed a (90) Day Face to Face Review on 11.2.2017 and recommended/approved return to phase 1 after seg. The recommendation is based on 20 Ill. Adm. Code Section 504.660 which indicates...Administrative Detention is a nondisciplinary status of confinement which removes an offender from general population or restricts the individual's access to general population...in determining placement of an offender in administrative detention, the CAO may consider among other matters 1) seriousness of offense, 2) safety & security of the facility & any person, 3) offender's behavioral and disciplinary history, 4) reports and recommendations concerning the offender, 5) the interview and any submissions of relevant material and information, 6) institutional order and 7) other legitimate penological interests; the CAO shall review the record of each offender in administrative detention every (90) days.

Grievance Officer notes that on 1.11.2018 the AD Committee completed a 90 day file review and recommended/approval for Grievant to remain in AD in his current Phase. Offender's are reviewed every 90 days.

**Recommendation:** Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the offender's grievance be DENIED based upon 20 Ill. Adm. Code Section 504.660 (Administrative Detention), issue warrants no further review or action from this Grievance Office.

K. WESNER  CCII
_____               _____
Print Grievance Officer's Name                     Grievance Officer's Signature

(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

**Date Received:** 1/31/18    ☑ I concur    ☐ I do not concur    ☐ Remand

**Comments:**

_____                                        1/31/18
Chief Administrative Officer's Signature                                    Date

| Offender's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_____        _____        _____
Offender's Signature                          ID#                      Date

Ex #20

Bruce Rauner
Governor



John Baldwin
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Offender: _Lockhart, Ian_                                         _2/26/18_
                                                                        Date

ID# : _R18787_

Facility: _Pontiac_

This is in response to your grievance received on _2/20/18_____. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: _12/20/17_  Grievance Number: _068147_  Griev Loc: _Pontiac._

- ☐ Transfer denied by the Facility
- ☐ Dietary _____
- ☐ Personal Property _____
- ☐ Mailroom/Publications _____
- ☒ Assignment (job, cell) _Administrative Detention Phase 1_____
- ☐ Commissary / Trust Fund _____
- ☐ Conditions (cell conditions, cleaning supplies, etc.) _____
- ☐ Disciplinary Report: Dated: _____ Incident # _____
- ☐ Other _____

Based on a review of all available information, this office has determined your grievance to be:

- ☐ Affirmed, Warden _____ is advised to provide a written response of corrective action to this office by _____
- ☒ Denied, in accordance with DR504F, this is an administrative decision.
- ☐ Denied, this office finds the issue was appropriately addressed by the facility Administration.
- ☐ Other: _____

- ☐ Denied as the facility is following the procedures outlined in DR525.
- ☐ Denied as procedures were followed in accordance with DR 420 for removal/denial of an offender from/for an assignment.
- ☐ Denied as this office finds no violation of the offender's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offender committed the offense cited in the report.

_____
_____

FOR THE BOARD: _Debbie Knauer_          CONCURRED: _John R. Baldwin_
                  Debbie Knauer                            John R. Baldwin
            Administrative Review Board                     Acting Director

CC: Warden, _Pontiac_ Correctional Center
    _Lockhart_ , ID# _R18787_

_Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization._

**www.illinois.gov/idoc**

Ex<sup>T</sup> 21
continued on Otherside

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

Personal Handwritten Copy

| Date: Feb 9th, 2018 | Offender: (Please Print) Ian Lockhart | ID#: R-18787 |

| Present Facility: Pontiac C.C. | Facility where grievance issue occurred: Pontiac C.C. |

**NATURE OF GRIEVANCE:**

☐ Personal Property ☐ Mail Handling ☐ Restoration of Good Time ☐ ADA Disability Accommodation
☐ Staff Conduct ☐ Dietary ☐ Medical Treatment ☐ HIPAA
☐ Transfer Denial by Facility ☐ Transfer Denial by Transfer Coordinator ☑ Other (specify): Equal Protection & Due Process Violation

☐ Disciplinary Report: ___/___/___ _____
    Date of Report          Facility where Issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

This grievance is pertaining to 2 issues within the A.D. committee's decision to force me to remain in the current phase (Phase 1).

On 1-11-18 I had a file review with the A.D. committee to determine whether or not I would elevate to the next phase (Phase 2), or be released to general population. Because it was only a "file review" I was not allowed to be present for the hearing.

On 1-26-18 I received a counseling summary noting that: "The A.D. Committee completed a review on 1-11-18, and the final decision notes you will remain in A.D. at the current phase."

Issue #1 - I was never given a _____ (Continued on Otherside)

Relief Requested: To be taken out of phase 1 A.D., or transferred to another institution where phase 1 A.D. is not identical to disciplinary segregation. Also, I request that the phase 1 status here in Pontiac C.C. to be changed where it does not reflect a disciplinary status. (other side)

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_I. Lockhart_                          R-18787      2 / 9 / 2018
Offender's Signature                      ID#            Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: ___/___/___        ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

Print Counselor's Name        Counselor's Signature        Date of Response ___/___/___

---

**EMERGENCY REVIEW**

Date Received: ___/___/___    Is this determined to be of an emergency nature?  ☐ Yes; expedite emergency grievance
                                                                                ☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature                Date ___/___/___

Distribution: Master File; Offender        Page 1        DOC 0046 (8/2012)
Printed on Recycled Paper

reason by the A.D. Committee as to why they decided to force me to remain in phase 1 and not elevate to phase 2 or be released to general population. Because I've been given no reason or explaination for their decision, I'm left with an inadequat notice and no fair opportunity to defend against their reason for the decision.

Issue #2 - With my current phase (Phase 1) dispite being titled Administrative Detention phase 1, it is no differente than disciplinary segregation here in Pontiac C.C.. To have placed me in phase 1 to begin with in this institution (Pontiac C.C.) is a violation of my rights to equal protection of law and due process. This has forced me to remain in disciplinary segregation for 90 more days after my seg time was over, with only a change in the title of my status.

More importantly as it pertains to me being forced to remain in phase 1 for an additional 90 days with no justification further violates my rights. This places me in a disciplinary segregation status for 180 days without being sentenced by the adjustment committee; moreover, no justification by the A.D. committee.

Relief Requested Continued: Lastly I request to be given the reasons why I'm being forced to remain in my current status of phase 1 as opposed to being elevated to phase 2 or being released to general population.

— End of Grievance —

**From:**
I. Lockhart
# R-18787
N-833

Ex # 22

October 11, 2017

**To:**
Medical Director Pontiac c.c.

*(Personal Handwritten Copy)

I'm reaching out to you at this time because I'm in desperate need of your help. I've been writing\ submitting sick-call request forms everyday since the 1st of October (and a few times prior) but all have gone unanswered.

The problem is that my eye is in constant pain, its blurry and causing really bad headaches. I haven't been able to sleep much and I'm unsure if this is the cause of my headaches, but its driving me crazy.

This all started when something was thrown in my face which smelled like Feces, Urine, and Magic Shave. It took about 3½ hours to be able to use water to wash my face and eyes out because I was out on the sea yard. This took place on September 16, 2017. The medical staff denied me immediate medical attention and I wasn't able to see the doctor (Ojelade) until Sept 21st, 2017; dispite, speaking to every nurse & med tech that crossed my path (from Sept 16th – Sept 21st) my issues of pain, burry vision, and light headedness went completely ignored.

On September 21, 2017, Dr. Ojelade prescribed me some pain pills (Tylenol, 2 weeks worth) and put me on the waiting list to see the actual eye doctor. The pain pills has not worked and offered <u>NO</u> relief what so ever. The eye doctor seen me on the 29th of September and prescribed some eye drops that I <u>**never**</u> received to this date.

Page 1 of 2

Ex #22

*(Personal Handwritten) Copy

The medical staff has never flushed my eyes to ensure they were properly cleaned, and no one has ever checked or tested me to see if I was exposed or contracted any diseases.

Human waste mixed with a chemical was thrown into my face (eyes) exposing me to all sorts of diseases, and other possible long term or permenit damage. I've been in pain since the 16th of September and unable to sleep and the medical staff isn't properly addressing it.

October 11, 2017

Respectfully Submitted,
I. Lockhart # R-13787
N-833 Pontiac c.c.

Page 2 of 2

State of Illinois }
County of Livingston }

Ex #23
Page 1 of 2

# Affidavit

I, Ian Lockhart, #R-18787, do hereby declare and affirm that the following information within this affidavit is true and correct in substance and facts.

On August 27, 2016 I've written and mailed out an emergency grievance directly to Warden Randy S. Pfister of Stateville C.C.. Before mailing out said grievance, I made myself a personal handwritten copy (see: EX#4). This emergency grievance was pertaining to the constant and on-going threats, intimidation, and harassment I suffered at the hands of Stateville's C.C. intel/investigations unit from July 18, 2016 to August 26, 2016.

On September 13, 2016, during an interview with Stateville C.C.'s intel/investigations officers, I was confronted with the above noted grievance I filed against them by officer Clemons. Officer Clemons made multiple threats against me if I continued to pursue the grievance against him and officer Taylor (and the intel/investigations unit). I wasn't exactly sure what officer Clemons was going to do with the grievance after he showed it to me, so on or about a few days after Sept 13, 2016 I wrote a letter to Warden Randy S. Pfister asking about the status of said grievance. I never got a response from the warden, and it wasn't until after I was transferred to Pontiac C.C. in November 2016 that I learned I had no pending grievances in Stateville C.C..

On February 19, 2017 I mailed out a grievance to the counselor's office addressing the 2 separate assaults I suffered (on 12-21-16 & 1-19-17) where SMI (seriously mentally ill), and other inmates spat on me, and threw feces, urine, blood, and magic shave on me. This grievance also addressed the staff's deliberate indifference. I never heard back from the counselors office on this grievance and none of my request for a status report was answered.

On February 9, 2018, I mailed out (and written) a grievance on the Jane & John Does of the A.D. hearing committees failure to give notice of it reason for punishing me and forcing me to remain in phase 1 for; and, the issue of Pontiac C.C.'s A.D. Phase 1 being identical to disciplinary segregation (punitive). The counselor's office responded to this grievance and after returning it to me I forwarded said grievance directly to the grievance officer. To this day, I still have yet to get a response from the grievance officer, but my 2 year dead line to file this civil rights claim is tolling near its end.

Page 1 of 2

I've personally written every grievance noted in this complaint in a timely fashion, using the proper forms, and followed the Illinois Administrative rules for filing grievances. I've done all that was reasonable to exhaust **my** administrative remedies.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109, I declare, under penalty of perjury, that everything contained herein is true and accurate to the best of my knowledge and belief. I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on:
April 20th, 2018

Respectfully Submitted,

C. Lockhart

Ian Lockhart # R-18787
Pontiac Correctional Center
P.O. Box 99
Pontiac, Illinois. 61764

Page 2 of 2